**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HTG CAPITAL PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-2129 |
| | ) | |
| JOHN DOE(S), | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

HTG Capital Partners, LLC, ("HTG") through its attorneys, Kopecky Schumacher

Bleakley Rosenburg, P.C., states as follows for its Complaint against the John Doe Defendant(s)

(the "Doe Defendant(s)" or "Defendants"):

### INTRODUCTION

This matter involves the egregious manipulation of the U.S. Treasury futures markets

trading at the Board of Trade of the City of Chicago ("CBOT"), a designated contract market and

a wholly-owned subsidiary of CME Group, Inc. ("CME Group"). Since at least January, 2013,

and continuing through at least August, 2014, the Doe Defendant(s) engaged in an illegal form of

market manipulation known as "spoofing" in the U.S. Treasury futures markets. The term

"spoofing" refers to, among other things, the manipulative practice of entering bid or offer orders

with the intent to cancel those orders before execution (these orders are hereinafter referred to as

"Deceptive Orders"). Examples of spoofing include entering orders to create the appearance of

false market depth or to create artificial price movements upwards or downwards. This practice

enabled the Doe Defendants to manipulate the market to their benefit, and to the detriment of

1

HTG and other market participants. This Complaint seeks to recover the financial losses HTG suffered as a result of the Doe Defendant(s)' illegal activity.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to Section 22 of the Commodity Exchange Act ("Act"), 7 U.S.C. §25 and 28 U.S.C. §1331.

2.      Venue is proper because the acts, practices and courses of business constituting the violations alleged in this Complaint occurred within the jurisdiction of the United States District Court for the Northern District of Illinois. The illegal activity described in this Complaint occurred on CME Globex, an electronic trading platform operated by CBOT and CME Group that utilizes computer servers located in Chicago, Illinois and Aurora, Illinois.

## PARTIES

3.      Plaintiff HTG is a Rule 106-J Equity Member Firm of the CBOT. HTG's principal place of business is in Chicago, Illinois. HTG has been trading in the electronic futures markets for many years. Through its continuous trading and active monitoring of market activity, HTG observed a clear, discernible, and consistent pattern of manipulative and disruptive trading during the relevant period in the CBOT five (5), ten (10) and thirty (30) year U.S. Treasury futures markets.

4.      Plaintiff does not know the identity of the Doe Defendant(s) because trading on the CME Globex platform is anonymous.   For that reason, Plaintiff does not know the precise number of Doe Defendant(s).  However, Plaintiff believes (based on the distinctive signature associated with the trading activity) that one party is likely responsible for most of the spoofing at issue in this Complaint.  Moreover, allegations as to the Doe Defendants' entry of orders are made on information and belief as the actual identity of the entity entering the orders is not

known to HTG.  The Doe Defendant(s) are persons or entities that trade on CBOT through the

CME Globex trading platform.  CME Group requires all CME Globex operators to identify

themselves by the submission of a unique operator identification.  Therefore, CBOT and/or CME

Group are able to specifically identify the Doe Defendant(s), and Plaintiff will be able to obtain

the Doe Defendant(s)' identities through discovery.  Plaintiff will request leave to amend this

Complaint upon learning the identity of the Doe Defendant(s).

### THE DOE DEFENDANT(S)' PATTERN OF "SPOOFING"

5.      The Doe Defendant(s) accomplished their spoofing activity by submitting

Deceptive Orders into the CME Globex platform which they intended to cancel before execution.

By submitting Deceptive Orders, the Doe Defendant(s) lured other market participants (like

HTG) into selling contracts below, or buying contracts above, what would otherwise be the

prevailing market price.  These Deceptive Orders created the false appearance of market pressure

in a certain direction (to either buy or sell).  The Doe Defendant(s) then "flipped" the market by

canceling their Deceptive Orders and virtually simultaneously entering an order in the opposite

direction at the same price.

6.      In this case, the Doe Defendant(s)' spoofing is characterized by a unique

signature: a well-defined pattern consisting of three phases.  In the first phase, the Doe

Defendant(s) would enter Deceptive Orders that they intended to cancel before execution (the

"build-up" phase).[1]  These orders were deceptive because the Doe Defendant(s) intended to

cancel the orders before they could be filled; they created the false appearance of market depth,

which, in turn, caused unwitting market participants to react by entering buy or sell orders in the

same direction as the false momentum.  In the second phase, the Doe Defendant(s) canceled the

---

[1] In certain instances, the Doe Defendant(s) would modify the orders (by increasing the quantity for example) to avoid execution instead of canceling them.  These modifications produced the same result as a cancel: the orders were not executed.

Deceptive Orders they had entered during the build-up phase (i.e., the "cancel" phase). In the third phase, virtually simultaneous to the cancels, the Doe Defendant(s) would enter one or more orders in the opposite direction of the Deceptive Orders and at the same price, trading against the remaining available contracts at that price, thereby "flipping" the market (the "flip" phase).

7.      It is this well-defined, three-phased pattern that demonstrates that the Doe Defendant(s)' entered orders with the intent to cancel those orders before execution. Indeed, the frequency and speed with which the build-up, cancel and flip progression took place eliminates the possibility that this pattern was anything other than orchestrated. The Doe Defendant(s) could not have legitimately changed their mind as to the direction of the market so quickly, so often, and with such precision.

8.      Further, as part of the three-phased pattern, the Doe Defendant(s)' sometimes modified the orders they entered in the build-up phase. By modifying certain Deceptive Orders with an increase to quantity, the Doe Defendant(s) caused the Globex Platform to reassign a lower queue priority to the order, minimizing the likelihood that the modified Deceptive Orders would be filled. In addition, the fact that the cancels and the orders that "flipped" the market took place almost simultaneously evidences a premeditated coordination. Finally, the Doe Defendant(s) three-phased pattern appears to be a coordinated attack across the U.S. Treasury markets. The Doe Defendant(s) often implemented the three-phased pattern in multiple U.S. Treasury products at the same time. All of the above is strong evidence that the Doe Defendant(s) entered orders that they intended to cancel prior to execution.

## THE CME GLOBEX PLATFORM

9.      The CME Group utilizes an electronic trading platform called CME Globex to facilitate trading at the CBOT. Orders entered through the CME Globex platform become part of

4

the Globex order book.  The CME Globex platform displays to HTG and other market participants the total quantity available at the ten best prices on both the buy and sell side for each product.   The best available bid is the highest available price for buy orders in the market, and is referred to as the "top of the book."  Similarly, the best offer price, or ask, is the lowest available price for sell orders, and the best offer is the top of the book. CME Globex displays the total order volume to all market participants.  When U.S. Treasury futures orders are pending at the same price, CME Globex assigns a queue priority to those orders (based on the sequence in which the orders were entered), and matches buy orders with sell orders by priority.  The queue priority Globex assigns follows the first in, first out ("FIFO") method of data flow, wherein the oldest (first) entry, or head of the queue is processed first.

       10.    A typical order book displayed by CME Globex for the 10 Year U.S. Treasury futures market looks like this:

| ZNH5 (10 Year, expiring in March 2015) | | |
|---|---|---|
| Bid | Price | Ask |
|  | 128 7/32 | 304 |
|  | 128 6.5/32 | 896 |
|  | 128 6/32 | 1008 |
|  | 128 5.5/32 | 980 |
|  | 128 5/32 | 1133 |
|  | 128 4.5/32 | 1150 |
|  | 128 4/32 | 1154 |
|  | 128 3.5/32 | 1143 |
|  | 128 3/32 | 1097 |
|  | 128 2.5/32 | 250 |
| 350 | 128 2/32 |  |

| | | |
|---|---|---|
| 1250 | 128 1.5/32 | |
| 1254 | 128 1/32 | |
| 1032 | 128 0.5/32 | |
| 997 | 128 | |
| 1014 | 127 31.5/32 | |
| 897 | 127 31/32 | |
| 637 | 127 30.5/32 | |
| 616 | 127 30/32 | |
| 626 | 127 29.5/32 | |

The blue (left) column contains the total quantity of buy (or "bid") contracts and the red (right) column contains the total quantity of sell (or "ask" or "offer") contracts at each price level. Each price level (center column) constitutes a distinct priority queue, and typically contains many separate orders. If an order nears the front of the queue, a trader can decrease the priority of the order within the queue by increasing the quantity of the order (a "modify up"). By decreasing the priority of the order within the queue the spoofer minimizes the likelihood that the order will be filled or "hit."

11. The Doe Defendant(s) implemented a disruptive and manipulative trading strategy, known in the industry as "spoofing." They likely did so, in part, through the use of computer-based trading software and algorithms designed to deceive other market participants about the depth of order volume and to create artificial price movements upwards or downwards. As part of the strategy, the Doe Defendant(s) would place orders to either buy or sell contracts— orders which the Doe Defendant(s) had no intention of being filled. The Doe Defendant(s) would place these Deceptive Orders at the "top of the book" — sell orders were placed at the best available offer price, and buy orders were placed at best available bid price. The Doe

Defendant(s)' Deceptive Orders induced other market participants to react as Doe Defendant(s) intended, and enter orders in the direction of the Doe Defendant(s)'s false momentum. The Doe Defendant(s) would then "flip" the market by simultaneously canceling the Deceptive Orders and placing orders in the opposite direction at the same price. The result was that the Doe Defendant(s) were able to buy more U.S. Treasury futures contracts at prices lower than, or sell more contracts at prices higher than, the prices which would have been available in the market before they entered and canceled their Deceptive Orders.

<u>SPECIFIC EXAMPLES OF THE DOE DEFENDANT(S)' SPOOFING</u>

12.     On information and belief, based on the unique pattern, the short time frame for the entry of the orders, and the accuracy of the cancel and flip orders, on December 6, 2013, in the 5-Year U.S. Treasury futures market (ticker symbol ZFH4), one of the Doe Defendants built up the "ask" side of the order book by entering and modifying at least 5 orders to sell ZFH4 at the price of 120 6.5/32 in 24 milliseconds (i.e., the "build-up"). The Doe Defendant then canceled all of its sell orders and simultaneously entered an order to buy 784 contracts at the same price (i.e., the "flip"). The CME Globex platform matched HTG's pending ZFH4 sell order against the Doe Defendant's buy (flip) order, leaving HTG holding a short position in a market poised to rise due to the momentum flip to the buy side. The market rose a tick, which equates to $7.8125 per contract, and HTG suffered a loss as a result. The build-up and the flip are depicted in the graph below:

**The "Build-Up"**

| Time | Quantity | | | Trade | Change | | |
| | Bid | Ask | Ask | | | | |
| | 120 6.25/32 | 120 6.5/32 | 120 6.75/32 | | Qty. | No. Ords. | Type |
|---|---|---|---|---|---|---|---|
| 8:33:36.515 | 528 | **583** | 856 | | 40 | 1 | Add |
| . . . | | | | | | | |
| 8:33:36.518 | 521 | **626** | 894 | | 32 | 1 | Add |
| . . . | | | | | | | |
| 8:33:36.522 | 527 | **707** | 885 | | 28 | 1 | Add |
| . . . | | | | | | | |
| 8:33:36.532 | 307 | **944** | 928 | | 66 | 1 | Add |
| 8:33:36.539 | 290 | **992** | 917 | | 48 | 1 | Add |

*Order and Quantity Added*

Doe Defendant entered a series of 5 Deceptive sell orders (i.e., orders where Doe Defendant had no intent that the order would be filled) in just 24 milliseconds. Those Deceptive Orders caused the available quantity of contracts on the ask side of the market to surge from 583 to 992. This is the "build-up" phase of the spoof.

8

**The Cancel and "Flip"**

About 4 seconds later, Defendant simultaneously canceled all the Deceptive sell orders entered during the build-up phase.

As a result of the canceled orders, the available quantity of contracts on the ask side of the market fell sharply from 958 to 784.



| Time | Bid | Quantity Ask | Ask | Trade | Change |||
|---|---|---|---|---|---|---|---|
| | 120 6.25/32 | 120 6.5/32 | 120 6.75/32 | | Qty. | No. Ords. | Type |
| 8:33:40.359 | 393 | **958** | 987 | | 40 | 1 | Cancel |
| 8:33:40.359 | 393 | **926** | 987 | | 32 | 1 | Cancel |
| 8:33:40.360 | 356 | **898** | 987 | | 28 | 1 | Cancel |
| 8:33:40.360 | 356 | **832** | 987 | | 66 | 1 | Cancel |
| 8:33:40.360 | 356 | **784** | 987 | | 48 | 1 | Cancel |
| 8:33:40.363 | 332 | | 987 | **784** | 784 | 1 | Trade |
| 8:33:48.266 | 790 | 798 | 71 | | | | |

Defendant simultaneously entered a buy order for 784 contracts, the entire remaining quantity on the sell-side after the flip.

**The Result**

| Time | Quantity | | | Trade | Change | | |
| | Bid | Ask | Ask | | | | |
| | 120 6.25/32 | 120 6.5/32 | 120 6.75/32 | | Qty. | No. Ords. | Type |
|---|---|---|---|---|---|---|---|
| 8:33:40.359 | 393 | **958** | 987 | | 40 | 1 | Cancel |
| 8:33:40.359 | 393 | **926** | 987 | | 32 | 1 | Cancel |
| 8:33:40.360 | 356 | **898** | 987 | | 28 | 1 | Cancel |
| 8:33:40.360 | 356 | **832** | 987 | | 66 | 1 | Cancel |
| 8:33:40.360 | 356 | **784** | 987 | | 48 | 1 | Cancel |
| 8:33:40.363 | 332 | | 987 | 784 | 784 | 1 | Trade |
| 8:33:48.266 | 790 | 798 | 71 | | | | |

Defendant's buy order for 784 contracts was matched against all 784 available contracts on the ask side of the market, moving the market up one tick.

The momentum continued, moving the market up by an additional tick.

13.     Similarly, on information and belief based on the unique pattern, the short time frame for the entry of the orders and the accuracy of the cancel and flip orders, on January 9, 2014, in the 10-Year U.S. Treasury futures market (ticker symbol ZNF4), one of the Doe Defendant(s) built up the "bid" side of the order book by entering and modifying at least 5 orders to buy ZNH4 contracts at the price of 123 2/32 in 38 milliseconds (i.e., the "build-up"). Defendant then canceled all of the buy orders and simultaneously entered an order to sell 1,134 ZNH4 contracts at the same price (i.e., the "flip"). The CME Globex platform matched HTG's

pending ZNH4 buy order against the Doe Defendant's sell order, leaving HTG holding a long position in a market poised to fall due to the momentum flip to the sell side. The market fell and HTG suffered a loss as a result. The build-up and flip looked like this:

**The "Build-Up"**



| Time | Quantity | | | Trade | Change | | |
|---|---|---|---|---|---|---|---|
| | **Bid** | **Bid** | **Ask** | | | | |
| | **123 1.5/32** | **123 2/32** | **123 2.5/32** | | **Qty.** | **No. Ords.** | **Type** |
| 6:51:26.885 | 1391 | **833** | 441 | | 21 | 1 | Add |
| . . . | | | | | | | |
| 6:51:26.886 | 1390 | **1017** | 441 | | 185 | 1 | Add |
| . . . | | | | | | | |
| 6:51:26.901 | 1425 | **1215** | 389 | | 188 | 1 | Add |
| . . . | | | | | | | |
| 6:51:26.910 | 1419 | **1354** | 388 | | 167 | 1 | Add |
| . . . | | | | | | | |
| 6:51:26.923 | 1393 | **1627** | 370 | | 254 | 1 | Add |

*Order and Quantity Added*

Defendant(s) entered a series of 5 Deceptive buy orders (i.e., orders where Defendant had no intent that the order would be filled) in just 38 milliseconds. Those Deceptive Orders caused the available quantity of contracts on the bid side of the market to surge from 833 to 1627. This is the "build-up" phase of the spoof.

**The Cancel and "Flip"**



About 27 seconds later, after other market participants had joined the Deceptive Orders, signaling that the market would go higher. Defendant simultaneously canceled all the Deceptive buy orders entered during the build-up phase.

As a result of the canceled orders, the available quantity of contracts to buy fell sharply from 1928 to 1134.

| Time | Quantity | | | Trade | Change | | |
|---|---|---|---|---|---|---|---|
| | Bid | Bid | Ask | | Qty. | No. Ords. | Type |
| | 123 1.5/32 | 123 2/32 | 123 2.5/32 | | | | |
| 6:51:53.719 | 1655 | 1928 | 255 | | 21 | 1 | Cancel |
| 6:51:53.719 | 1655 | 1743 | 255 | | 185 | 1 | Cancel |
| 6:51:53.719 | 1655 | 1555 | 255 | | 188 | 1 | Cancel |
| 6:51:53.719 | 1655 | 1134 | 255 | | 421 | 2 | Cancel |
| 6:51:53.724 | 1655 | | 242 | 1134 | 1134 | 1 | Trade |
| 6:52:11.500 | 3 | 1727 | 1892 | | | | |

Defendant simultaneously entered a sell order for 1134 contracts, the entire remaining quantity of contracts available on the bid side of the market.

**The Result**

| Time | Quantity | | | Trade | Change | | |
|------|----------|--|--|-------|--------|--|--|
| | Bid | Bid | Ask | | Qty. | No. Ords. | Type |
| | 123 1.5/32 | 123 2/32 | 123 2.5/32 | | | | |
| 6:51:53.719 | 1655 | **1928** | 255 | | 21 | 1 | Cancel |
| 6:51:53.719 | 1655 | **1743** | 255 | | 185 | 1 | Cancel |
| 6:51:53.719 | 1655 | **1555** | 255 | | 188 | 1 | Cancel |
| 6:51:53.719 | 1655 | **1134** | 255 | | 421 | 2 | Cancel |
| 6:51:53.724 | 1655 | | 242 | **1134** | 1134 | 1 | Trade |
| 6:52:11.500 | 3 | 1727 | 1892 | | | | |

Defendant's sell order for 1134 contracts was matched against all 1134 available contracts on the bid side of the market, moving the market down by one tick.

That momentum continued, moving the market down by an additional tick.

14.     Similarly, on information and belief, based on the unique pattern, the short time frame for entry of the orders, and the accuracy of the cancel and flip orders, on August 27, 2014, in the 30-Year U.S. Treasury futures market (ticker symbol ZBU4) one of the Doe Defendant(s) built up the "ask" side of the order book by entering and modifying at least 8 orders to sell ZBU4 at the price of 140 17/32 (i.e., the "build-up").  Defendant then canceled all of the sell orders and simultaneously entered an order to buy 573 contracts at the same price (i.e., the "flip").  The CME Globex platform matched HTG's pending sell order against the Doe Defendant's buy order, leaving HTG holding a short position in a market poised to rise due to the momentum flip

to the buy side.  The market rose and HTG suffered a loss as a result.  The build-up and the flip looked like this:

**The "Build-Up"**

| Time | Quantity | | | Trade | Change | | |
|------|------|------|------|------|------|------|------|
| | Bid | Ask | Ask | | Qty. | No. Ords. | Type |
| | 140 16/32 | 140 17/32 | 140 18/32 | | | | |
| 9:32:18.168 | 750 | **370** | 1133 | | 75 | 1 | Add |
| . . . | | | | | | | |
| 9:32:18.169 | 750 | **413** | 1145 | | 43 | 1 | Add |
| . . . | | | | | | | |
| 9:32:18.170 | 740 | **485** | 1145 | | 72 | 1 | Add |
| . . . | | | | | | | |
| 9:32:18.170 | 730 | **492** | 1145 | | 7 | 1 | Add |
| 9:32:18.171 | 730 | **534** | 1145 | | 42 | 1 | Add |
| . . . | | | | | | | |
| 9:32:18.172 | 730 | **541** | 1145 | | 7 | 1 | Add |
| . . . | | | | | | | |
| 9:32:18.172 | 730 | **583** | 1147 | | 42 | 1 | Add |
| . . . | | | | | | | |
| 9:32:18.173 | 725 | **651** | 1145 | | 29 | 1 | Add |

Defendant(s) entered a series of 8 Deceptive sell orders (i.e., orders where Defendant had no intent that the order would be filled) in a short burst.  Those Deceptive Orders caused the available quantity of contracts on the ask side of the market to surge from 370 to 651. This is the "build-up" phase of the spoof.

*Order and Quantity Added*

14

**The Cancel and "Flip"**



About 1.3 seconds later, Defendant simultaneously canceled all the Deceptive Sell Orders entered during the build-up phase.

As a result of the canceled orders, the available quantity of orders to sell fell sharply from 704 to 584.

Defendant simultaneously entered a buy order for 603 contracts — more than the amount of contracts available on the ask side of the market at 140 17/32.

**The Result**

| Time | Quantity | | | Trade | Change | | |
|------|----------|-----|-----|-------|--------|------|------|
| | Bid | Ask | Ask | | | | |
| | 140 16/32 | 140 17/32 | 140 18/32 | | Qty. | No. Ords. | Type |
| 9:32:19.476 | 558 | **704** | 1088 | | 197 | 4 | Cancel |
| 9:32:19.476 | 558 | **584** | 1088 | | 120 | 4 | Cancel |

… 

| Time | Bid 140 16/32 | Ask 140 17/32 | Ask 140 18/32 | Trade | Qty. | No. Ords. | Type |
|------|------|------|------|------|------|------|------|
| 9:32:19.484 | 558 | **30** | 1088 | **573** | 603 | 1 | Trade |
| 9:32:19.534 | 1110 | 700 | 607 | | | | |

→

Defendant's buy order for 603 contracts was matched against all 573 available contracts for sale, moving the market up by one tick.

15.     In each instance the Doe Defendant(s) always traded in the opposite direction of the "build up" of the bid or sell side of the market to manipulate the market as part of an attempt to deceive other market participants for their own economic advantage.

16.     Moreover, the above-referenced instances of manipulative spoofing are part of a well-defined pattern of manipulative activity that occurred during 2013 and 2014. This pattern of repeated build-ups, cancels and flips provides strong evidence of the Doe Defendant(s)' intent to accomplish the manipulative spoofing described above.

17.     HTG has identified thousands of instances of illegal spoofing in which it was damaged in the CBOT five (5), ten (10) and thirty (30) year U.S. Treasury futures markets during the 2013 and 2014 calendar years. To put this in perspective, if the Doe Defendant(s) had

profited by just one "tick" in the three examples shown above, the Doe Defendant(s) would have generated profits of $6,125, $17,718 and $17,906 respectively. Exhibit No. 1 contains the data ascertainable by HTG for the spoofing instances in which HTG was damaged in 2013.[2] Exhibit No. 2 contains the data ascertainable by HTG for the spoofing instances in which HTG was damaged in 2014. More specifically, the spreadsheet shows the canceled orders and aggressive "flip" orders which were matched with HTG's orders, by sequence number.

18.     HTG was able to detect the above-described spoofing based on publicly-available market data. Since identifying the disruptive and manipulative trading behavior of the Doe Defendant(s), HTG has been forced to deploy substantial time and resources toward developing protective trading strategies designed to detect and avoid Doe Defendant(s)' illegal trading. Despite those efforts, HTG was damaged by Doe Defendant(s)' disruptive and manipulative trading behavior.

19.     In addition, HTG was forced to substantially reduce its trading activity for significant periods of time due to the disrupted and manipulated markets caused by the Doe Defendant(s)' trading activity. The foregoing deprived HTG of opportunities in CBOT's U.S. Treasury futures markets, resulting in significant financial losses.

## COUNT I
## Violations of the Commodity Exchange Act – Disruptive Practices

20.     HTG restates and realleges the foregoing paragraphs for this paragraph.

21.     Section 4c of the Act, 7 U.S.C. §6(c), makes it unlawful to engage in any trading, practice or conduct that "is of the character of, or is commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid or offer before execution)."

---

[2] Exhibits 1 and 2 were prepared to the best knowledge and belief of HTG, its counsel and expert given the limited information available thus far and the anonymity of trading.

22.     The Act authorizes private lawsuits in cases where the liable party purchased or sold a contract of sale of any commodity for future delivery through the use or employment of any prohibited "manipulative device or contrivance" or caused "manipulation of the price" of a contract of sale of any commodity for future delivery. 7 U.S.C. §25(a)(1)(D)(i-ii).  Here, the disruptive practice commonly known as spoofing is a manipulative device or contrivance, and the Deceptive Orders manipulated the price by causing artificial price movements upward or downward.

23.     In its Interpretive Guidance and Policy Statement entitled "Antidisruptive Practices Authority" published on May 28, 2013 ("Interpretative Guidance"), the CFTC provided that Section 4c(a)(5)(C) of the Act applies to bid and offer activity on all registered entities, such as the CBOT (see page 31892 and 31896 of Interpretive Guidance).  Accordingly, activity in the CBOT's 5, 10 and 30-Year U.S. Treasury futures markets is subject to the disruptive practices prohibitions contained in the Act.

24.     In its Interpretative Guidance, the CFTC provides four non-exclusive examples of spoofing including:

(i) Submitting or cancelling bids or offers to overload the quotation system of a registered entity;

(ii) submitting or cancelling bids or offers to delay another person's execution of trades;

(iii) submitting or canceling multiple bids or offers to create an appearance of false market depth; and

(iv) submitting or canceling bids or offers with intent to create artificial price movements upwards or downwards.

(*Id*. at page 31896.)

25.     Here, the Doe Defendant(s)' behavior created an appearance of false market depth, and created artificial price movements upward or downward. The Doe Defendant(s)' intent to submit orders that they intended to be canceled before execution can be inferred in part from the speed at which they build-up the market, the steps they took to avoid having orders filled, and the repeated pattern of instantaneously canceling orders and "flipping" the market.

26.     Each of the 6,960 instances of spoofing identified in Exhibit Nos. 1 and 2 constitute separate and independent violations of Section 4c(a)(5)(C) of the Act.

### COUNT II
### Violations of the Commodity Exchange Act – Prohibition Against Manipulation

27.     HTG restates and realleges the foregoing paragraphs for this paragraph.

28.     Section 6(c) of the Act, 7 U.S.C. §9 makes it "unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any . . . contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . ."

29.     The Act authorizes private lawsuits in cases where the liable party purchased or sold a contract of sale of any commodity for future delivery through the use or employment of any prohibited "manipulative device or contrivance" or caused "manipulation of the price" of a contract of sale of any commodity for future delivery. 7 U.S.C. § 25(a)(1)(D)(i-ii).

30.     Here, the Doe Defendant(s) employed a manipulative and deceptive device and contrivance in violation of Section 6(c) of the Act.  The Doe Defendant(s)' intent can be inferred in part from the speed at which they build up the market, the steps they took to avoid having orders filled, and the repeated pattern of cancelling orders and "flipping" the market.  The above-referenced instances of manipulative spoofing are part of a well-defined pattern of manipulative

19

activity that occurred many times during 2013 and 2014. This unmistakable pattern of repeated

build-ups, cancels and flips provides strong evidence of the Doe Defendant(s)' intent to

accomplish the manipulative spoofing described above for their own economic gain and to the

detriment of other market participants.

31.     Each of the 6,960 instances of spoofing identified in Exhibit Nos. 1 and 2

constitute separate and independent violations of Section 6(c) of the Act 7 U.S.C. §9.

### CONCLUSION

WHEREFORE, Plaintiff HTG Capital Partners, LLC, prays for judgment in its favor and

against Doe Defendant(s) in an amount in excess of $100,000.00, and for such other and further

relief as this Court deems fair and just.

### HTG DEMANDS TRIAL BY JURY.

Respectfully submitted,

HTG CAPITAL PARTNERS, LLC

/s/ James L. Kopecky

James L. Kopecky (6225359)
Daryl M. Schumacher (6244815)
Kopecky Schumacher Bleakley Rosenburg, PC
203 N. LaSalle St. Suite 1620
Chicago, IL 60601
Phone: (312) 380-6552
Fax: (312) 268-6493
www.ksblegal.com