HTG CAPITAL PARTNERS, LLC,                )
                                          )
              Plaintiff,                  )          No. 15 C 02129
                                          )
       v.                                 )
                                          )          Judge Edmond E. Chang
JOHN DOE(S),                              )
                                          )
                                          )
              Defendants.                 )

## ORDER

## I. Introduction

Plaintiff HTG Capital Partners, LLC brings this action against unknown John Does, alleging that they manipulated futures markets on the Chicago Board of Trade. Specifically, HTG alleges that Defendants violated the Commodity Exchange Act (CEA) by entering orders (sometimes buy, sometimes sell) that they did not intend to fulfill, canceling these orders, and then placing bona fide orders on the opposite side of the market.[1] According to HTG, this practice created artificial price movements that gave Defendants a competitive advantage and harmed HTG's economic position. Because trading is anonymous, HTG issued a non-party subpoena to Chicago Mercantile Exchange Group (CME Group), a holding company that owns the Chicago Board of Trade (CBOT) and Chicago Mercantile Exchange,

---

[1] The Court has subject matter jurisdiction over HTG's case under 28 U.S.C. § 1331. HTG makes claims under the Commodity Exchange Act, 7 U.S.C. § 1, *et seq*. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Inc., to identify the anonymous John Doe counterparties to HTG's trades. Defendant Doe 1 stepped forward, anonymously, as the counterparty to three of the trades in HTG's complaint. Both Doe 1 and CME Group object to the subpoena.

At issue now is HTG's motion to compel compliance with the subpoena and Doe 1's motion to quash the subpoena, which CME Group joins. As explained below, there is a chicken-or-the-egg quality to the procedural posture, because the Court does conclude that arbitration of the dispute is dictated by CBOT's membership rules—which operate as an agreement to arbitrate—so long as Doe 1 and the other Does are in fact CBOT members. But the Court has neither a definitive record—at least not yet—to find that Doe 1 and the other Does are CBOT members, nor does the Court have a formal motion to arbitrate, *see* 9 U.S.C. § 3, because these issues are being presented in the context of a subpoena dispute. So further filings are needed, premised on the holdings in this Opinion. There is the added twist of Doe 1's request (and presumably the request of other Does, if other Does exist) to proceed anonymously, not just as to the public, but even as to HTG. On this request too, further filings are needed as detailed below. To help follow along, before getting to the analysis of the current issues, the bottom line will be:

1. CME Group must submit a declaration, under seal and for now *ex parte*, proving: the identities of the Doe Defendants (including Doe 1) who were counterparties to the trades listed in both the body and the exhibits of HTG's complaint; the membership status of the Doe Defendants (including Doe 1) both at present *and* at the time they conducted the contested trades; and an explanation of how CME Group identified the Doe Defendants, including supporting exhibits if appropriate. CME Group shall provide notice to the Does in advance of the filing of the declaration.

2. After CME Group files the declaration, Doe 1 and any other Does who are members subject to Rule 600.A (discussed below) shall file a motion to compel arbitration. The Does may preserve their other arguments against the complaint or this venue, but as discussed below, absent any surprises, the ground for decision in this case will be compulsion of arbitration. For now, the Does may proceed anonymously. If there are more than five Does, then the Does may ask for an under seal and *ex parte* hearing to address how to manage the situation, although the number of Does must be disclosed to HTG if there is such a request.

3. On the issue of anonymity, the parties shall submit additional briefing on the confidentiality protections (or lack of them) afforded by CBOT arbitration. Among other issues, the parties must address whether it is appropriate to disclose the identities of the Does to HTG under a protective order, including an attorney's-eye's only order.

*If* CME Group and the Does prove that the Does are CBOT members, then it is likely that, absent any surprises, the Court will grant the anticipated motions to arbitrate, and thus quash the subpoena and deny the motion to compel. Whether the Court does so in the context of the Does' identities being disclosed to HTG (at least) will depend on the additional briefing on the issue of anonymity.

## II. Background

HTG is a member of the Chicago Board of Trade and has been trading in the futures markets for many years. R. 1, Compl. ¶ 3. In 2013, it noticed a pattern of disruptive trading in the five, ten, and thirty-year U.S. Treasury futures markets. *Id*. ¶ 4. Specifically, HTG observed that the John Doe Defendants would engage in a trading pattern that included what HTG alleges are three phases: the (1) build up; (2) cancel; and (3) flip. *Id*. ¶¶ 5-8. This practice is called "spoofing," which is "the manipulative practice of entering bids or offer orders with the intent to cancel these orders before execution" in order "to create the appearance of false market depth or

to create artificial price movements upwards or downwards." *Id.* at 1. Spoofing works as follows: in the initial build-up phase, a Doe Defendant entered trades that it intended to cancel before execution, creating the appearance of market pressure in a certain direction (to either buy or sell). *Id.* ¶¶ 5-6. This, in turn, caused other market participants to react by entering buy or sell orders in the same direction as the Doe-created momentum. *Id.* ¶ 6. Next, Doe would cancel the initial orders it entered during the first phase. *Id.* Then, in the last flip phase, Doe would enter trades in the opposite direction of his initial trades. *Id.* As a result, Doe benefited from the "false momentum" and was able to either purchase futures contracts at lower prices or sell futures contracts at higher prices than it would have obtained without its non-bona-fide trades. *Id.* ¶¶ 6-7. Further, Doe's order for the "flipped" trades would influence the market, causing the price of futures contracts to go up (if Doe had bought) or to go down (if Doe had sold). *Id.* ¶¶ 7, 12-13, 17. HTG alleges that it was a counterparty to these "flipped" trades—that is, Doe's final sell orders were matched against HTG's buy orders, or Doe's final buy orders were matched against HTG's buy orders. *Id.* HTG alleges that it was harmed by Doe's trades because the artificial price movements caused HTG to either "hold[] a long position in a market poised to fall due to the momentum flip" or "hold[] a short position in a market poised to rise due to the momentum flip." *Id.* ¶ 13-14.

HTG brought suit under the Commodity Exchange Act based on this spoofing activity. Analyzing publicly available data for patterns of this three-phase trading activity, HTG identified thousands of its own trades in which it believed it was the

counterparty to a spoofed transaction. Compl. Exh. A, 2013 Spoofing Transactions; Compl. Exh. B, 2014 Spoofing Transactions. HTG illustrated in detail three of these transactions in the body of the complaint and included approximately 7,000 additional transactions in chart form as exhibits to the complaint. *Id.* The problem, however, is that HTG does not know the identities of the traders because trading on the CBOT is anonymous. *Id.* ¶ 4. Only the CBOT and its parent company, CME Group, know the identities of traders. *Id.* After filing the complaint, HTG filed a motion for expedited discovery and sought leave to issue a subpoena to CME Group. R. 8, Pl.'s Mot. for Expedited Disc. The Court granted this motion, but noted that there had been no adversarial presentation yet: "the criteria for early discovery are readily met, in light of the need to identify the Doe Defendants. Of course, an adversarial presentation may affect the conclusion that a prima facie case has been alleged, but the necessary first step is identifying the defendants." R. 10, Minute Entry dated 4/24/2015. HTG then issued a non-party subpoena to CME Group to identify HTG's counterparties to the trades listed in its complaint. R. 13, Pl.'s Mot. to Compel at 1. CME Group objected to HTG's subpoena, R. 13-1, Subpoena Objections, as did Doe 1, which identified itself as the counterparty to the three trades HTG detailed in the body of its complaint. R. 19, Def.'s Mot. to Quash. Doe 1 is a CBOT member. Def.'s Mot. to Quash at 2.

After CME Group objected to the subpoena, HTG filed a motion to compel compliance, R. 13, and Doe 1 filed a motion to quash the subpoena against CME Group and to proceed anonymously, R. 19. CME Group also opposed HTG's motion

to compel and supported Doe 1's motion to quash. R. 24. Thus, three motions are pending: (1) HTG's motion to compel CME Group to comply with the subpoena; (2) Doe 1's motion to quash the subpoena, to which CME Group joins; and (3) Doe 1's motion to proceed anonymously.

### III. Standard

A court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R Civ. P. 45(d)(3)(iv). Discovery motions "are committed to the sound discretion of the district court." *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992). In conducting an undue burden analysis, courts should compare the burden of compliance with the benefit of production of the material sought. *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). "The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) (citation and quotations omitted).

As to relevance, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Pac. Century Int'l, Ltd.,* 282 F.R.D. at 195 (citation and quotations omitted). The broad scope of discovery permits a party to seek information that is "reasonably calculated to lead to the discovery of admissible evidence." *Id.* (citing Fed. R. Civ. P. 26(b)(1)). This means that a subpoena may request information that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access

to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Additionally, non-party status is a factor in weighing the burden of compliance against the benefit of production. *United States v. AmeriGroup Ill.*, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005). Non-parties are afforded this consideration because "[they] have a different set of expectations" than parties. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 WL 5026228, at *2 (N.D. Ill. Aug. 26, 2015) (citation omitted). While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an "unwanted burden." *Id.*

## IV. Analysis

### A. Doe 1's Standing to Quash

As an initial matter, HTG argues that Defendant Doe 1 lacks standing to object to the non-party subpoena on CME Group. Pl.'s Mot. to Compel at 4-5. A movant that is not the recipient of a subpoena ordinarily has no standing to seek to quash a subpoena unless "the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (citation omitted). Specifically, a non-recipient can object when she has a claim of privilege or when the subpoena implicates her privacy interests. *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012). For example, "[b]usinesses have a legitimate interest in the privacy of their financial information that can confer standing to challenge a subpoena to a third party to produce that

information." *Countryman v. Cmty. Link Fed. Credit Union*, 2012 WL 1143572, at *3 (N.D. Ind. Apr. 3, 2012) (after being terminated, the plaintiff served a subpoena to a credit union association seeking financial information about the defendant employer, who had standing to object). "Courts have found standing … even where the Movant's privacy interest is minimal at best." *Sunlust Pictures,* 2012 WL 3717768, at *2 (citation and quotations omitted) (defendant "[had] at least a minimal privacy interest" because the subpoena sought personally identifying information that could link the defendant to online activity).

Here, Doe 1 has standing to seek to quash the subpoena against CME Group. Doe 1 has at least a minimal privacy interest in the subject of the subpoena, which requests information about the identity of traders and trading patterns on the CBOT. Doe 1 is a member of the CBOT and is the counterparty to at least three spoofing trades identified by HTG, and possibly more. Trading on the Exchange is anonymous, and the CBOT has measures to protect trading information. Def.'s Mot. to Quash at 17. For example, CBOT Rule 532 prohibits a person from "disclos[ing] another person's order to buy or sell except to a designated Exchange official or the CFTC."[2] Because Doe 1 has a privacy interest in the trading information sought by the subpoena, it has standing to move to quash the subpoena.

---

[2] In its briefing, Doe 1 directed the Court to the CBOT online rulebook, available at http://www.cmegroup.com/rulebook/CBOT/. Def.'s Mot. to Quash at 2, n.2. The version of the CBOT Rules supplied in this litigation by CME Group, R. 25-4, differs from CBOT's online version. In addition, some of the rules cited by the parties are not included in CME Group's version. The Court referenced the online version because it contains the complete list of rules and is likely to be the most updated version.

## B. Arbitrability of HTG's Claims

CME Group and Doe 1 argue that the subpoena should be quashed because HTG's claims must be arbitrated. Because "the dispute at issue cannot properly proceed in litigation, *any* burden imposed by a subpoena in connection with that dispute constitutes an 'undue burden' within the meaning of Rule 45." R. 24, CME Group's Mem. in Opp'n at 13 (emphasis in original). Respondents also argue that the subpoena does not seek relevant information because "any subpoena issued in connection with an action that does not belong in federal court cannot be reasonably calculated to lead to admissible evidence in that action, as required by Rule 26." *Id.* The Court agrees that it would be burdensome to mandate discovery for a claim that cannot be litigated in court. But the Court must first determine whether the claims in this case must be arbitrated. And to do that, CME Group must make the threshold disclosure of the Doe Defendants' identities and CBOT membership statuses because this information affects arbitrability.

It should first be noted "that whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (citation and quotations omitted). *See also, e.g., Lehman Bros. Inc. v. Certified Reporting Co.*, 939 F. Supp. 1333, 1336 (N.D. Ill. 1996) ("Resolving arbitrability is a matter entrusted to the courts.") (citing *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986); *Spear, Leeds & Kellogg v. Central Life Ass. Co.*, 85 F.3d 21, 25 (2d Cir.1996)). And "a court may order arbitration of a particular dispute only where

the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co.*, 561 U.S. at 297 (emphasis in original) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995); *AT & T Tech., Inc.*, 475 U.S. at 648-49)). The Court must first determine whether the parties have an arbitration agreement. *Lehman Bros. Inc.*, 939 F. Supp. at 1336. If so, the Court then decides whether the scope of the arbitration agreement covers the disputes at issue in this case. *Id.* at 1337. If there is a possibility that some of HTG's claims may proceed in court and are not subject to mandatory arbitration, then compliance with the subpoena would not be an undue burden, nor would it seek irrelevant or non-discoverable information.

### 1. HTG's Claims Against Doe 1

HTG and Doe 1 have what appears to be a valid arbitration agreement. The CBOT Rules provide the basis for an agreement to arbitrate between members, and both HTG and Doe 1 are members of the CBOT, Compl. ¶ 3; CME Group's Mem. in Opp'n at 3, or at least it appears that way (as explained later, Doe 1 will have to prove this up in a mandated filing). Upon becoming a member, a party "shall be required to sign a written agreement to observe and be bound by the Certificate of Incorporation, these Bylaws and the Rules." Def.'s Mot. to Quash at 13 (citing CBOT Bylaws, Art. I § 2). The members must adhere to CBOT Rules, including the arbitration requirements in Chapter 6. In particular, "disputes between and among members … shall be subject to mandatory arbitration in accordance with the rules of this Chapter." CBOT Rule 600.A.

"That exchange rules create an enforceable arbitration contract has been made clear by the Second and Seventh Circuits." *Lehman Bros. Inc.*, 939 F. Supp. at 1336. In *Geldermann*, the Seventh Circuit held that because the plaintiff was a CBOT member, the plaintiff had consented to be bound by CBOT arbitration rules and waived his right to an Article III forum. *Geldermann, Inc. v. Commodity Futures Trading Comm'n*, 836 F.2d 310, 318 (7th Cir. 1987). *See also Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1362 (N.D. Ill. 1990) ("As members of the Chicago Board of Trade, Zechman and Merrill Lynch are bound by CBOT Rule 600.00," the relevant arbitration provision at the time). Similarly, because both HTG and Doe 1 are CBOT members bound by the Exchange Rules, they entered into a valid and enforceable arbitration agreement.

In addition, CBOT's arbitration rules cover the dispute between HTG and Doe 1. Disputes between members "that are based upon facts and circumstances that occurred at a time when the parties were members shall be subject to mandatory arbitration … ." CBOT Rule 600.A.[3] Mandatory arbitration covers "claims … that relate to or arise out of any transaction on or subject to the rules of the Exchange." *Id.* The dispute between HTG and Doe 1 clearly involves a "transaction on … the Exchange." HTG does not dispute that the transactions at issue were on the Exchange, and that is all that is needed to subject the claim to

---

[3]CBOT Rule 600.A's mandatory arbitration applies assuming that Doe 1 was a CBOT member at the time it transacted with HTG on December 3, 2013, January 9, 2014, and August 27, 2014. Compl. ¶¶ 12-19. Although the parties seem to agree that Doe 1 is currently a CBOT member, they do not provide Doe 1's membership status at the time of the disputed trades. As discussed below, CME Group must provide a signed declaration with this information before Doe 1 files, and before the Court formally grants, a motion to compel arbitration. *See infra* Section IV(B)(2).

mandatory arbitration. Nor is there a genuine concern that an arbitration under CBOT Rules would allow a spoofer to escape: spoofing is barred by CBOT Rule 575. That Rule mandates that "[n]o person shall enter or cause to be entered an order with the intent, at the time of order entry, to cancel the order before execution or to modify the order to avoid execution." CBOT Rule 575.A. CME Group's Market Regulation Advisory Notice also clarifies that "Rule 575 prohibits the type of activity identified by the Commission as 'spoofing,' including submitting or canceling multiple bids or offers to create a misleading appearance of market depth and submitting or cancelling bids or offers with intent to create artificial price movements upwards or downwards." CME Group's Mem. in Opp'n, Exh. 5, Advisory Notice RA 1405-5R. In sum, CBOT Rule 600.A applies to HTG and Doe 1 because the dispute involves a transaction on the Exchange, and a CBOT-mandated arbitration can provide relief for spoofing.

Doe 1 makes an alternative argument, which CME Group does not join, that HTG's spoofing claims do not belong in federal court because they are *only* subject to resolution through CBOT's enforcement procedures. Def.'s Mot. to Quash at 14. Under this argument, the claims cannot even be arbitrated; rather, the CBOT itself would have exclusive authority to investigate and punish a violation. *Id.* Specifically, Doe 1 cites CBOT Rule 407, which provides that "[t]he Market Regulation Department shall investigate potential or alleged Rule violations." After members lodge a written complaint on a trade infraction, the Market Regulation Department may issue charges and conduct a hearing. CBOT Rules 409, 514. Doe 1

suggests that these enforcement procedures provide the exclusive manner of resolving a trading infraction and that Rule 600.A only applies to disputes "not otherwise subject to [these] separate enforcement procedures." Def.'s Mot. to Quash at 14. But CBOT's Rules do not expressly say that the two procedures—enforcement by the CBOT and arbitration by the members—are mutually exclusive. Indeed, the Rules provide for both enforcement *and* arbitration proceedings, and there is no hint in any Rule that Rule 600.A excludes trading infractions from arbitration. Nor do the enforcement Rules differentiate between claims that must be handled by the Market Regulation Department and claims addressed by member-to-member arbitration. Put another way, Doe 1 cannot be right about the limitation on arbitration because no Rule or standard tells anyone what claims are subject to the Market Regulation Department and what claims are subject to arbitration. The silence is telling.

Doe 1 also cites CBOT Rules 588 and 622 for the propositions that spoofing claims involve "adverse effects on market integrity" and that those types of claims must first be submitted to the Exchange. Def.'s Mot. to Quash at 14. But those Rules are inapplicable here. CBOT Rule 588 grants the Global Command Center (a support center) the "absolute and sole discretion [to] adjust trade prices or cancel any trade if it believes that allowing the trade(s) to stand as executed could have a material, adverse effect on the integrity of the market." When "[a] party enters an order that results in a price adjustment or trade cancellation" by the Global Command Center, that party "shall be responsible for demonstrated claims of

realized losses incurred" by the order. CBOT Rule 588.E. Other individuals claiming "a loss pursuant to this section" must first submit their claims to the Exchange before pursuing arbitration. *Id.*; CBOT Rule 622. But in this case, HTG's claims do not involve losses pursuant to Rule 588, which governs only the Global Command Center's adjustment or cancellation of certain trades.

In sum, Doe 1's alternative argument is unpersuasive. The scope of Rule 600.A covers the dispute between HTG and Doe 1, so those claims are subject to binding arbitration—so long as Doe 1 is in fact a member of the CBOT, and was one at the time of the trades in question. As noted above in the Opinion's introduction, the Court acknowledges the procedural oddity of compelling arbitration when the parties have instead moved to compel compliance with a subpoena, and conversely, to quash it. And the Court does not have record evidence proving that Doe 1, or any other Doe for that matter, was and is a CBOT member. To move forward, CME Group must file, under seal and *ex parte* (at least for now), a signed declaration confirming Doe 1's identity and membership status both now and at the time Doe 1 conducted the disputed trades. CME Group must also provide an explanation of how it identified Doe 1 as the counterparty to HTG's trades. The explanation should also be supported by exhibits, which hopefully will make clear the prove-up on membership status. This should cure the problem that this information, right now, is only provided through arguments made in the parties' briefing. After the declaration is submitted, Doe 1 shall file a motion to compel arbitration, and may

note that it is preserving any other arguments it might have for challenging the complaint. As explained next, the same way forward will apply to the other Does.

## 2. HTG's Claims Against The Other Doe Defendants

Even though the dispute between HTG and Doe 1 is arbitrable, the Court's inquiry does not end. The Court must also determine whether HTG's claims against the unknown Doe Defendants are subject to arbitration. These claims involve the 7,000 or so allegedly spoofing transactions committed by still-unknown John Does and detailed in the complaint exhibits. HTG argues that these claims cannot be subject to arbitration until CME Group reveals the traders' identities and membership statuses. R. 26, Pl.'s Reply at 5-6. The Court agrees that CME Group must prove the membership statuses of the traders in order to obtain a decision that all of these other claims are also subject to arbitration.

Although CBOT Rules mandate arbitration of member disputes over transactions on the Exchange, different rules apply to claims between members and non-members, depending on the status of the party bringing suit and the type of dispute. CBOT Rule 600.D. As outlined in the "Permissive Arbitrations" section, members *may* submit to arbitration certain claims against non-members, including disputes about Exchange transactions. *Id.* In contrast, non-members *must* submit these same disputes to arbitration if they are against members. *Id.* ("in the event such a claim is submitted against a member, that member is required to arbitrate the dispute under the rules"). Additionally, certain employment claims between members and non-member employees (regardless of which party brings suit) *must*

be arbitrated, including non-compete clauses and terms of employment relating to the trading floor. CBOT Rule 600.B. The instant dispute does not involve non-competes or employment terms. Thus, there is no suggestion that HTG must arbitrate spoofing claims against non-members, and Respondents do not point to any Rule requiring arbitration in this scenario.

In the complaint exhibits, HTG identifies around 7,000 allegedly spoofing trades conducted by still-unknown John Does. The Court cannot yet say that HTG's claims against all John Does are subject to binding arbitration. It is possible that some of these John Does are not CBOT members, and CBOT Rules do not require that members arbitrate claims against non-members (with certain exceptions not applicable here, as noted above). Accordingly, to determine whether these claims must be arbitrated or properly belong in federal court, CME Group must make the threshold disclosure of the Doe Defendants' identities and their CBOT membership statuses. If some of these John Does are non-members, then HTG may pursue its claims in court and would have no other way to identify the defendants or pursue its claims without the subpoena. The identity of the John Does and their membership status are therefore relevant to HTG's claims and provides the necessary starting point. Thus, the relevance of the identities of the John Does outweighs the burden of complying with the subpoena, even the burden on a non-party like CME Group. So, in addition to the prove-up of Doe 1's membership as discussed above, CME Group's declaration must also provide: the identities of the remaining John Does, the current membership status of the John Does, the membership status of the John

Does at the time of their trades, and an explanation of how CME Group identified the John Does. Like Doe 1, the remaining John Does may also move to compel arbitration if they are also members subject to CBOT Rule 600.A.

Respondents offer two arguments why the remaining claims are nonetheless subject to arbitration: (1) any discovery on the identity of the parties should be conducted in arbitration; and (2) because the only developed claims in the complaint are the three transactions against Doe 1, a CBOT member, all properly pled claims are subject to CBOT's arbitration provision. R. 27, Joint Reply at 6. As to the first argument, the Court's referral of the claims against the unknown John Does could prevent HTG from litigating claims against non-members in federal court, as HTG has a right to do against non-members. As previously explained, the unknown John Does might not be CBOT members, and members do not have to arbitrate claims against non-members. But if HTG were required to submit non-member claims to arbitration, it would have to waive any objection to jurisdiction as to claims against non-members. CBOT Rule 600.E ("Any member or non-member who submits a claim or grievance to arbitration … or who takes any steps therein, shall be conclusively presumed to have voluntarily recognized and agreed to the jurisdiction of the panel or hearing committee of the Board to hear and determine the claim or appeal."). Again, Respondents do not dispute the possibility that the remaining John Does could be non-members or cite any Rule that members must submit claims against non-members to arbitration.

In their second argument, Respondents argue that discovery as to the 7,000[4] or so transactions in the complaint exhibits is an undue burden because "the only developed claims in this case—those pertaining to the three transactions identified in the [body of the] complaint—are claims against John Doe, a CBOT member." Joint Reply at 6. For the remaining transactions in the exhibits, "HTG has not identified or described any similar behavior or resulting harm that it suffered … ." CME Group's Mem. in Opp'n at 5-6.[5] But HTG alleges that *all* of these transactions followed the same "unique" and "well-defined pattern" of a three-phase spoof that included "repeated build-ups, cancels and flips." Compl. ¶¶ 6, 15. In every transaction, Defendants allegedly entered orders with the intent to cancel before execution so that they could create an artificial momentum to influence prices. *Id.* at 1. Defendants then canceled these orders and "always traded in the opposite direction of the 'build up' of the bid or sell side of the market to manipulate the market as part of an attempt to deceive other market participants for their own economic advantage." *Id.* ¶ 16. As a counterparty to these spoofed trades, HTG alleges that it obtained unfavorable prices that were not set by the market. *Id.* ¶ 17. Thus, HTG has identified and described what it believes to be a violation of the CEA and the resulting harm for not only the three examples in the body of its

[4] CME Group contends that the complaint exhibits contain over 14,400 transactions. CME Group's Mem. in Opp'n at 4. The parties, however, do not explain the discrepancy or seem to argue that it affects the analysis.

[5] CME Group "do[es] not take a position on whether HTG has properly stated a claim, but to the extent that the Court finds HTG cannot state a claim, the subpoena must be quashed." CME Group's Mem. in Opp'n at 6, n.4. At this juncture, the Court is not considering a motion to dismiss and cannot say that HTG's claims as to the remaining 7,000 transactions are not properly pled.

complaint, but also for the transactions in its exhibits. CME Group must reveal the identities of the remaining John Does because this information is just as relevant to the thousands of transactions in the exhibits as it is to the three trades detailed in the complaint.

## C. Quashing On The Basis Of Confidentiality

CME Group also argues that the subpoena should be quashed because it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). (To be clear, CME Group advances this argument as a basis to quash the subpoena *outright*; the Court will address the implications on disclosure of the Does' identities to HTG or to the public as a separate question in the next section.) CME Group has not sufficiently shown that quashing the subpoena on this basis is justified. To demonstrate the confidential nature of the requested information, CME Group primarily relies on Section 12(a)(i) of the CEA, which provides that in the course of an investigation, "the Commission may not publish data and information that would separately disclose the business transactions or market positions of any person and trade secrets or names of customers." 7 U.S.C. § 12(a)(i). But in the same section, the CEA also makes clear that disclosure in litigation is authorized: "the Commission may disclose publicly any data or information that would separately disclose the market positions, business transactions, trade secrets, or names of customers of any person when such disclosure is made in connection with a … *judicial proceeding* brought under this chapter." *Id.* § 12(b) (emphasis added). Even before Section 12(b) was

enacted, courts routinely held that disclosure through judicial discovery was not a "publication" prohibited by Section 12(a). *See, e.g.*, *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C. Cir. 1984) ("Although [Section 12(a)] allows CFTC to withhold from public disclosure any data or information concerning or obtained in connection with any pending investigation of any person …, protection does not apply to discovery requested pursuant to rules 26 and 45 Fed. R. Civ. P.") (quotations omitted); *Rosee v. Bd. of Trade of City of Chicago*, 35 F.R.D. 512, 515 (N.D. Ill. 1964) (The "language [of Section 12(a)] would not appear to relate to disclosures pursuant to discovery proceedings under the Federal Rules of Civil Procedure and subject to supervision by the Court."). Thus, the public disclosure provisions of the CEA do not require that the subpoena be quashed on confidentiality grounds.

CME Group also cites its confidentiality policy and CBOT's operating rules governing confidentiality. CME Group's Mem. in Opp'n at 7-9. It is true that CBOT strives to protect member privacy, but CME Group cites no authority that these rules are grounds upon which a subpoena may be quashed in light of the provision of the CEA permitting this information to be disclosed in judicial proceedings. Consequently, the disclosure of confidential commercial information is not a basis for quashing this subpoena.

## D. John Doe's Motion to Proceed Anonymously

John Doe moves to proceed anonymously, and CME Group requests a protective order before submitting the identities of the traders in the complaint.[6] For the reasons explained below, the Court will call for additional briefing before deciding these motions.

Rule 10(a) requires a complaint to include the names of all the parties in a suit. Fed. R. Civ. P. 10(a). "That rule instantiates the principle that judicial proceedings, civil as well as criminal, are to be conducted in public." *Doe v. Marvel*, 2010 WL 4338478, at *1 (S.D. Ind. Oct. 27, 2010) (citing *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir.1997)). Subject to the strong presumption of public access, "[t]he use of fictitious names for parties, a practice generally frowned upon … is left within the discretion of the district court." *K.F.P. v. Dane Cnty.*, 110 F.3d 516, 519 (7th Cir. 1997) (citations omitted). A party seeking to proceed anonymously must show that the harm from disclosure exceeds the harm from concealment. *Doe v. Marvel*, 2010 WL 4338478, at *1 (citing *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)). Generally, in "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families, anonymous litigation may be permitted." *AF Holdings LLC v. Doe*, 2012 WL 5520861, at *3 (N.D. Ill. Nov.

---

[6] CME Group states that "to the extent that Respondent is required to produce any highly confidential documents in this matter, it will not do so until a valid and binding protective order is entered by the Court," Subpoena Objections ¶ 6, but does not brief the topic. To the extent that CME Group requests a protective order, the Court also defers decision until the parties submit the supplemental briefing regarding confidentiality protections in CBOT arbitration provisions.

13, 2012) (citation and quotations omitted). "Fictitious names are allowed to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Marvel*, 2010 WL 4338478, at *1 (citing *Blue Cross & Blue Shield United*, 112 F.3d at 872).

For example, courts have allowed defendants to proceed anonymously in copyright cases where the defendants were accused of downloading pornographic material. According to the reasoning of these cases, "Doe (as a defendant) has not purposely availed himself of the courts, [so] the public's interest in knowing his identity is weaker." *Sunlust Pictures, LLC*, 2012 WL 3717768, at *5. In addition, plaintiffs often brought these suits to improve their settlement positions, because defendants would be embarrassed to continue in a case where they were accused of downloading pornographic material. *Id. See also AF Holdings LLC*, 2012 WL 5520861, at *3. As applied by these district courts, the harm from disclosure, including the "potential embarrassment to Doe and the possibility that [the plaintiff] could use inappropriate litigation tactics to 'coerce' a settlement," exceeded the harm from disclosure. *Sunlust Pictures, LLC*, 2012 WL 3717768, at *6.

Here, the litigation does not involve similar matters of a highly personal or sensitive nature. Nor does it involve a particularly vulnerable defendant. But it is true that Doe 1 is a defendant and did not initiate the litigation. And it asserts that "associating a particular party with specific trading data would create a significant likelihood of competitive harm." Def.'s Mot. to Quash at 18. The Court takes Doe 1's arguments under advisement and requires additional briefing on the extent to

which CBOT arbitration provisions employ confidentiality protections, if any. The parties disagree on this point. CME Group declares that "[t]he purpose of … CBOT's member to member arbitration requirement is to provide privacy and strong confidentiality protections that counteract the danger of disclosing highly sensitive information." CME Group's Mem. in Opp'n at 9. In contrast, HTG contends that arbitration is "a forum in which the CBOT Rulebook does not impose any confidentiality on the parties." Pl.'s Reply at 10. CBOT's Rules regarding confidentiality in arbitration are important in assessing the suitability of proceeding anonymously. If CBOT arbitrations provide confidentiality protections, then Doe 1 should be able to proceed anonymously in a court where the action should not have been filed in the first place. The Court reserves decision on this question pending additional briefing by the parties, specifically citing to (and providing copies of) the pertinent CBOT arbitration Rules.

## V. Conclusion

For the reasons discussed above, the decisions on HTG's motion to compel and Doe 1's motion to quash are reserved for now, pending the additional filings. Additional filings are also needed before deciding Doe 1's motion to proceed anonymously. To repeat the plan as described in the introduction:

1. CME Group must submit a declaration, under seal and for now *ex parte*, proving: the identities of the Doe Defendants (including Doe 1) who were counterparties to the trades listed in both the body and the exhibits of HTG's complaint; the membership status of the Doe Defendants (including Doe 1) both at present *and* at the time they conducted the contested trades; and an explanation of how CME Group identified the Doe Defendants, including

supporting exhibits if appropriate. CME Group shall provide notice to the Does in advance of the filing of the declaration.

2. After CME Group files the declaration, Doe 1 and any other Does who are members subject to Rule 600.A (discussed below) shall file a motion to compel arbitration. The Does may preserve their other arguments against the complaint or this venue, but as discussed below, absent any surprises, the ground for decision in this case will be compulsion of arbitration. For now, the Does may proceed anonymously. If there are more than five Does, then the Does may ask for an under seal and *ex parte* hearing to address how to manage the situation, although the number of Does must be disclosed to HTG if there is such a request.

3. On the issue of anonymity, the parties shall submit additional briefing on the confidentiality protections (or lack of them) afforded by CBOT arbitration. Among other issues, the parties must address whether it is appropriate to disclose the identities of the Does to HTG under a protective order, including an attorney's-eye's only order.

The October 13, 2015 status hearing is accelerated to September 29, 2015, at 10:30 a.m., to discuss the scheduling of the filings.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 22, 2015