**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HTG CAPITAL PARTNERS, LLC,

    Plaintiff,

    v.

JOHN DOE(S),

    Defendants.

Case No. 15-cv-02129

HONORABLE EDMOND E. CHANG

**MOTION OF DOE DEFENDANTS 1, A, B, AND C TO COMPEL ARBITRATION**

KATTEN MUCHIN ROSENMAN LLP

Christian T. Kemnitz
Peter G. Wilson
christian.kemnitz@kattenlaw.com
peter.wilson1@kattenlaw.com
525 W. Monroe Street
Chicago, Illinois 60661-3693
Tel: (312) 902-5200
Fax: (312) 902-1061

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ............................................................................................. 2

    A.   Mandatory CME Dispute Resolution ...................................................................... 2

    B.   HTG's Federal Action ............................................................................................. 4

LEGAL STANDARDS ......................................................................................................... 7

ARGUMENT ......................................................................................................................... 9

    A.   This Dispute Is Subject To Mandatory Arbitration. ............................................. 10

    B.   Any Purported Arbitrability Issues Must Be Resolved In Arbitration. ............... 12

    C.   This Court May Not Decide Outstanding Discovery Issues. ............................... 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Statutes**

17 C.F.R. § 38.150(a) ........................................................................................................................ 2
17 C.F.R. § 38.250 ............................................................................................................................ 2
17 C.F.R. § 38.650 ............................................................................................................................ 2
17 C.F.R. § 38.700 ............................................................................................................................ 2
17 C.F.R. § 38.750 ...................................................................................................................... 3, 14
7 U.S.C. § 7(a) .................................................................................................................................. 2
7 U.S.C. § 7(d)(12) ........................................................................................................................... 2
7 U.S.C. § 7(d)(13) ........................................................................................................................... 2
7 U.S.C. § 7(d)(14) ...................................................................................................................... 3, 14
7 U.S.C. § 7(d)(2) ........................................................................................................................ 2, 14
7 U.S.C. § 7(d)(4) ............................................................................................................................. 2
7 U.S.C. §§ 6(a)(1), 7(d) .................................................................................................................. 2
9 U.S.C. § 2 .................................................................................................................................. 8, 10
9 U.S.C. § 3 .................................................................................................................................... 1, 8

**Cases**

*Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) ........................................................................................................................ 7
*Brown v. Gilligan, Will & Co.*, 287 F. Supp. 766, 769 (S.D.N.Y. 1968) ...................................... 10
*Chambers v. Aviva Life & Annuity Co.*, No. 12-cv-9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) ............................................................................................................................................. 8
*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) ...................................... 7
*Dental USA, Inc. v. Beak & Bumper, LLC*, No. 13-cv-2149, 2014 WL 683709, at *3 (N.D. Ill. Feb. 21, 2014) ............................................................................................................................................. 7
First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) .................................................... 13
*Geldermann, Inc. v. Commodity Futures Trading Comm'n*, 836 F.2d 310, 318 (7th Cir. 1987) ... 10
*Geldermann, Inc. v. Stathis,* 177 Ill. App. 3d 414, 418-19 (1988) ................................................. 10
*In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 174 (2d Cir. 2013) ..................... 2
*Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) ................................................................................................................................ 8
*John Olagues Trading Co. v. First Options of Chi., Inc.*, 588 F. Supp. 1194, 1999 (N.D. Ill. 1984) ... 10, 15
*Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) ..................................................... 7
*Karl Schmidt Unisia, Inc. v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW Local 2357*, 628 F.3d 909, 913 (7th Cir. 2010) .................................................................... 9
*Lohman v. Cap Mark, Inc.,* No. 03-cv-8965, 2004 WL 1157836, at *2 (N.D. Ill. May 24, 2004) ............. 9
*Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 481 (7th Cir. 2010) ............. 12
*Mason v. Bway Corp.*, No. 05-cv-516, 2007 WL 329156, at *3 (N.D. Ill. Jan. 25, 2007) ............. 7
*Meierfeld v. Geldermann, Inc.*, No. 95-cv-9911, 1996 WL 426362, at *1 (S.D.N.Y. July 30, 1996) ........ 10

*Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978)...........................................8, 14, 15
*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ........................9, 12
*Pacaud v. Waite*, 218 Ill. 138, 145 (1905) ...............................................................................................10
*Pleanum Fund, LP v. Chi. Mercantile Exch., Inc.*, No. 08-cv-6091 (N.D. Ill. Jan. 23, 2009 & Apr. 24, 2009) ......................................................................................................................................................10
*Salsitz v. Kreiss*, 198 Ill.2d 1, 14 (2001) ....................................................................................................12
*Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) .............................................8, 15
*Soucy v. Capital Mgmt. Servs., L.P.*, No. 14-cv-5935, 2015 WL 404632, at \*6 (N.D. Ill. Jan. 29, 2015) ...8
*Stathis*...........................................................................................................................................................10
*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008) ..........................................................................................9, 12
Yellow Cab Affiliation, Inc. v. N.H. Ins. Co., No. 10-cv-6896, 2011 WL 307617, at \*4 (N.D. Ill. Jan. 28, 2011) ......................................................................................................................................................13
*Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1369 (N.D. Ill. 1990) ...9, 10

**Other Authorities**

CBOT Bylaws, Article 1, § 2 ...................................................................................................................3, 10
CME Group Designated Contract Markets, http://www.cmegroup.com/product-codes-listing/designated-contract-market.html ..................................................................................................................................2

Doe Defendants 1, A, B and C (together, the "Doe Defendants"), through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to compel arbitration pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3) and/or Section 3 of the Federal Arbitration Act (9 U.S.C. § 3).

## PRELIMINARY STATEMENT

This action is an attempt by plaintiff HTG Capital Partners, LLC ("HTG") to circumvent the mandatory dispute resolution procedures that govern disputes between members of the Board of Trade of the City of Chicago ("CBOT" or "Exchange") arising from trading activity on the Exchange. HTG reportedly brought this action after "[f]ailing to get any traction in a CME Group arbitration process," and after HTG's counsel publicly voiced frustrations with the Exchange arbitration process.[1] Yet, as HTG knows, and as this Court already has recognized, HTG is contractually bound to submit any trading disputes involving other CBOT members to the Exchange for resolution in accordance with the CBOT Rulebook (the "CBOT Rules").

Because the Doe Defendants are all CBOT members, and because HTG's allegations concern trading activity on the CBOT Exchange, this Court should dismiss the pending proceedings and compel HTG to submit its frivolous claims to the Exchange for resolution. Moreover, any residual disputes regarding discovery requests in aid of HTG's purported claims must likewise be resolved by the Exchange and not by this Court.

---

[1] *See* Declaration of Peter G. Wilson dated November 24, 2015 (the "Wilson Declaration"), Exhibit A ("Trading firm sues rival, attacks CME," Crain's Chicago Business (Mar. 11, 2015)) ("HTG made similar allegations last August against Chicago high-speed rival Allston Trading as part of a CME arbitration process that Kopecky said had been 'an incredibly frustrating process' lasting now more than a year."); Exhibit B ("CME ordered to tell judge names of alleged spoofers in HTG Case," Bloomberg (Oct. 1, 2015)) ("HTG sued in federal court when it decided the arbitration process wasn't the best means of pursuing its case[.]").

1

**RELEVANT BACKGROUND**

A. **Mandatory CME Dispute Resolution**

CME Group Inc. ("CME") is comprised of four Designated Contract Markets ("DCMs"), including the CBOT, within the meaning of the Commodity Exchange Act ("CEA"). *See* 7 U.S.C. § 7(a); *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 174 (2d Cir. 2013); *see also* CME Group Designated Contract Markets, http://www.cmegroup.com/product-codes-listing/designated-contract-market.html. The CME is "subject to extensive oversight" by the CFTC and is required to abide by twenty-three "core principles" enumerated in the CEA. *In re Amaranth*, 730 F.3d at 174; 7 U.S.C. §§ 6(a)(1), 7(d).

Among other things, the CEA core principles require and empower the CME to establish and enforce mechanisms of market oversight and provide alternative dispute resolution. To this end, the CEA core principles provide:

- The board of trade shall establish, monitor, and enforce compliance with the rules of the contract market, including [. . .] (iii) rules prohibiting abusive trade practices on the contract market. 7 U.S.C. § 7(d)(2)(A); 17 C.F.R. § 38.150(a).

- The board of trade shall have the capacity and responsibility to prevent manipulation, price distortion, and disruptions of the delivery or cash-settlement process through market surveillance, compliance, and enforcement practices and procedures[.] 7 U.S.C. § 7(d)(4); 17 C.F.R. § 38.250.

- The board of trade shall establish and enforce rules—(A) to protect markets and market participants from abusive practices committed by any party, including abusive practices committed by a party acting as an agent for a participant; and (B) to promote fair and equitable trading on the contract market. 7 U.S.C. § 7(d)(12); 17 C.F.R. § 38.650.

- The board of trade shall establish and enforce disciplinary procedures that authorize the board of trade to discipline, suspend, or expel members or market participants that violate the rules of the board of trade, or similar methods for performing the same functions, including delegation of the functions to third parties. 7 U.S.C. § 7(d)(13); 17 C.F.R. § 38.700.

- The board of trade shall establish and enforce rules regarding, and provide facilities for alternative dispute resolution as appropriate for, market participants and any market intermediaries. 7 U.S.C. § 7(d)(14); 17 C.F.R. § 38.750.

Pursuant to these obligations, the CBOT has implemented a comprehensive set of regulatory procedures and enforcement mechanisms, as embodied by the CBOT Rules, to ensure that its exchanges meet the standards required by the CEA. *See, e.g.*, Ex. C, CBOT Rule 400, *et seq.* (establishing authority and jurisdiction for various regulatory and oversight departments and committees).[2] Among other things, the CBOT Rules require members to utilize these procedures in resolving complaints about trading activity and alleged violations of the CBOT Rules. *See id.* at CBOT Rule 400 ("Members are deemed to know, consent to and be bound by all Exchange Rules"); CBOT Rule 101 (members "shall be subject to all Exchange Rules" and "agree[] to have any disputes [. . .] which relate to or arise out of any transaction upon the Exchange or membership in the Exchange, resolved in accordance with Exchange Rules"); CBOT Rule 418 (traders on the CBOT Exchange "expressly consent[] to the jurisdiction of the Exchange and agree[] to be bound by and comply with the Rules of the Exchange in relation to such transactions"); *see also* Ex. D, CBOT Bylaws, Art. 1 § 2 ("Applicants for membership and any person or entity holding any membership in the Corporation shall be required to sign a written agreement to observe and be bound by . . . the Rules.").

Certain member complaints are subject to mandatory arbitration as set forth in CBOT Rule 600.A. In particular, under CBOT Rule 600.A., disputes between and among CBOT members that "relate to or arise out of" any transaction on the Exchange "shall be subject to mandatory arbitration in accordance with the rules of this Chapter." Ex. C, CBOT Rule 600.A. CBOT Rule 578 additionally provides that "ANY DISPUTE ARISING OUT OF THE USE OF

---

[2] All references to "Exhibits" or "Ex." in this Motion refer to the Exhibits to the Wilson Declaration.

3

SYSTEMS OR SERVICES OF THE EXCHANGE [. . .] SHALL BE ARBITRATED PURSUANT TO EXCHANGE RULES." *Id.* at CBOT Rule 578.C (emphasis in original).

Further, it is a violation of the CBOT Rules "to fail to submit to arbitration any dispute which Exchange staff, an arbitration panel or the Board decides should be arbitrated pursuant to Chapter 6[.]" *Id.* at CBOT Rule 432.R. "A Member who commences legal action against [. . .] another Member of the Exchange without first resorting to and exhausting the procedures established by [. . .] the mandatory arbitration provisions of Chapter 6 (including appeals to the Board), or any other Rules relating to settlement of disputes arising out of transactions or matters pertaining to the Exchange shall be deemed to have committed an act detrimental to the interest or welfare of the Exchange." *Id.* at CBOT Rule 440.

The CBOT Rules also expressly require that any challenges to arbitrability by either a claimant or a respondent must be submitted to arbitration. *Id.* at CBOT Rule 606. A party's failure to timely challenge arbitrability in arbitration "shall waive any right to object thereafter to the arbitrability of the dispute." *Id.* The arbitrability determination is made by the Chairman of the CME Arbitration Committee, whose determination "shall be final and is not appealable." *Id.*

**B. HTG's Federal Action**

HTG filed its Complaint against unidentified John Doe defendants on March 10, 2015. Dkt. 1. The allegations in the Complaint are based on "U.S. Treasury futures markets trading at the Board of Trade of the City of Chicago" and orders submitted "into the CME Globex platform." *Id.* at 1 & ¶ 5. In its Complaint, HTG admits that it "is a Rule 106-J member firm of CBOT that has been trading in the futures market for many years." *Id.* ¶ 3.

Shortly after filing its Complaint, HTG moved for expedited discovery and sought leave to serve a third-party subpoena on CME to learn the identities of the John Doe counterparties to

4

the thousands of trades alleged in the Complaint. Dkt. 8. HTG issued a subpoena to CME on or about April 28, 2015, and filed a motion to compel a response from CME on May 28, 2015.

On May 29, 2015, Doe Defendant 1 moved to quash the subpoena and requested leave to proceed anonymously. Dkt. 19. In its motion, Doe Defendant 1 demonstrated that HTG's claims against Doe Defendant 1 are subject to mandatory—and confidential—dispute resolution pursuant to the CBOT Rules and Exchange policies. *Id.* at 13-16. In particular, Doe Defendant 1 explained that HTG, as an acknowledged CBOT member, had knowingly, intentionally, and voluntarily agreed to be bound by the CBOT Rules, and that those Rules require HTG to pursue any purported claims against other CBOT members, such as those alleged in the Complaint, solely within the CBOT Exchange. *Id.* Doe Defendant 1 also explained that the CBOT Rules do not permit—and, in fact, expressly prohibit—members to initiate litigation against other members predicated on trading activity on the CBOT Exchange. *Id.*

On June 16, 2015, CME and CBOT submitted a brief in opposition to HTG's motion to compel discovery and in support of Doe Defendant 1's motion to quash. Dkt. 24. In its filing, CME explained the policy objectives advanced by its member-member arbitration procedures, including the consistent regulation of transactions on the CBOT Exchange, the uniform interpretation of the CBOT Rules, and the protection of highly-confidential member trading information. *See id.* at 6-11. CME emphasized the importance of these concerns in light of the CBOT's statutory status as a DCM and self-regulatory organization. *See id.* at 10. CME also confirmed that HTG is a CBOT member that has contractually agreed to submit its claims against other CBOT members to mandatory CBOT arbitration. *Id.* at 11-12.

On July 6, 2015, HTG submitted a memorandum in further support of its motion to compel discovery from CME and in opposition to Doe Defendant 1's motion to quash. Dkt 26.

In its submission, HTG did not dispute that it was a CBOT member at the relevant times, or that the CBOT Rules constitute a valid and binding agreement to arbitrate claims between CBOT members. Nevertheless, HTG took the position that there might be "substantive arbitrability issues" for the Court to resolve, and renewed its request for discovery on that basis. *Id*. at 7. HTG did not state what information could obviate its obligation to resolve its claims against another CBOT member within the Exchange. The only arbitrability issues HTG purported to identify were (i) whether Doe Defendant 1 was a CBOT member at the relevant times, and (ii) whether HTG's claims were arbitrable. *Id.*

On July 20, 2015, Doe Defendant 1, CBOT, and CME submitted a joint reply in further support of Doe Defendant 1's motion to quash. Dkt. 27. In that submission, Doe Defendant 1 demonstrated, among other things, that there can be no "substantive arbitrability issues" for this Court to resolve because the CBOT Rules require CBOT members to submit questions of arbitrability to arbitration. *Id.* at 5. Doe Defendant 1 further explained that because HTG may not pursue its claims against Doe Defendant 1 in federal court, the permissibility and scope of the discovery HTG seeks in this case must be left for an arbitrator to determine in a properly-instituted CBOT arbitration. *Id.* at 6.

On September 22, 2015, this Court issued an order recognizing that the "CBOT's arbitration rules cover the dispute between HTG and Doe 1," and that "because both HTG and Doe 1 are CBOT members bound by the Exchange Rules, they entered into a valid and enforceable arbitration agreement." Dkt. 30 at 11. Nevertheless, in light of the "procedural oddity of compelling arbitration when the parties have instead moved to compel compliance with a subpoena," the Court directed Doe Defendant 1 to file a motion to compel arbitration, and directed CME to submit proof on an under-seal and *ex parte* basis showing that Doe Defendant 1

6

is (and was at all relevant times) a CBOT member. *Id.* at 14. The Court stated that "absent any surprises, the ground for decision in this case will be compulsion of arbitration." *Id.* at 24.

On November 2, 2015, CME submitted to this Court, on an under-seal and *ex parte* basis, evidence confirming that the Doe Defendants are and were at all relevant times members of the CBOT Exchange. Dkt. 32, 33.

This Court held a status conference on November 3, 2015. At that conference, HTG admitted that compelled arbitration would "absolutely be the result" in the absence of a respondent-specific argument against arbitration. Nov. 3, 2015 Hr'g Transcript at 19:20-20:4 (admitting that "unless I have a respondent-specific argument, I think we're going to end up arbitrating"). However, HTG took the position that "Respondents can waive arbitration" and that it needs to know the Doe Defendants' identities in order to address whether a particular defendant has "waived arbitration." *Id.* at 16:19-23, 18:14-18. In response, this Court recognized that if HTG were to have any "respondent-specific arguments about the propriety of arbitration," it could presumably raise those arbitrability issues in arbitration. *Id.* at 17:19-23.

## LEGAL STANDARDS

Courts in this Circuit, including this Court, have held that venue is improper, and thus that dismissal under Rule 12(b)(3) is warranted, when the parties to the litigation agreed to arbitrate. *See, e.g.*, *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014); *Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Dental USA, Inc. v. Beak & Bumper, LLC*, No. 13-cv-2149, 2014 WL 683709, at *3 (N.D. Ill. Feb. 21, 2014) (Chang, J.); *Mason v. Bway Corp.*, No. 05-cv-516, 2007 WL 329156, at *3 (N.D. Ill. Jan. 25, 2007) (Norgle, J.). In deciding a motion to dismiss under Rule 12(b)(3), the Court

7

may examine facts outside the complaint. *Cont'l Cas.*, 417 F.3d at 733; *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003).[3]

A motion to compel arbitration "requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (quoting *Texaco Exploration v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)). Once a motion to compel arbitration is filed, the court "must" resolve it and "may consider only issues relating to the making and performance of the agreement to arbitrate." *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) (internal quotation marks omitted). "If the agreement to arbitrate is valid, the court has no further power or discretion to address the issues raised in the complaint but must order arbitration, for it was the unmistakably clear congressional purpose that the arbitration procedure be speedy and not subject to delay and obstruction in the courts." *Id.* (internal quotation marks and punctuation omitted).

As a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "There is a presumption in favor of arbitrability: as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Dental USA*, 2014 WL 683709, at *3 (internal quotation marks omitted). This presumption can be rebutted only by "an express provision excluding the grievance from

---

[3] Under Section 3 of the Federal Arbitration Act, "upon being satisfied that the issue involved in [the pending] suit or proceeding is referable to arbitration[,]" courts must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Numerous courts in this District and elsewhere have held that a "case should be dismissed and not stayed" under Section 3 when "all of the claims are arbitrable." *Chambers v. Aviva Life & Annuity Co.*, No. 12-cv-9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (collecting authorities); *see also Soucy v. Capital Mgmt. Servs., L.P.*, No. 14-cv-5935, 2015 WL 404632, at *6 (N.D. Ill. Jan. 29, 2015) ("The court therefore finds that this case should be dismissed and not stayed because [plaintiff's] sole claim for relief is arbitrable.").

arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration." *Karl Schmidt Unisia, Inc. v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW Local 2357*, 628 F.3d 909, 913 (7th Cir. 2010) (internal punctuation and citations omitted). Mindful of the Supreme Court's mandate to resolve any doubts concerning the scope of arbitration provisions in favor of arbitration, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983), courts in this Circuit broadly construe such arbitration provisions. *See, e.g., Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1369 (N.D. Ill. 1990); *Lohman v. Cap Mark, Inc.,* No. 03-cv-8965, 2004 WL 1157836, at *2 (N.D. Ill. May 24, 2004). "Any ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008) (internal quotation marks omitted).

## ARGUMENT

As this Court already has recognized, disputes between CBOT members involving trading on the CBOT Exchange—such as HTG's claims against the Doe Defendants—are subject to mandatory CBOT arbitration.[4] Since there have been no "surprises" or other intervening developments that would warrant a departure from the Court's tentative conclusion that HTG must arbitrate its claims (*see* Dkt. 30 at 3, 24), the Doe Defendants' motion to compel arbitration should be granted. Moreover, in accordance with controlling law, this Court should refrain from reaching any other disputed issues, including HTG's pending motion to compel discovery.

---

[4] The Doe Defendants recognize that this Court previously found that HTG's spoofing claims may be subject to private arbitration, and not solely to CBOT enforcement procedures. *See* Dkt. 30 at 12-13. The Doe Defendants expressly reserve their rights with respect to that determination, as well as all other arguments and defenses against HTG's allegations. *See* Dkt. 30 at 24.

9

### A. This Dispute Is Subject To Mandatory Arbitration.

It is well-established that the "rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself." *Brown v. Gilligan, Will & Co.*, 287 F. Supp. 766, 769 (S.D.N.Y. 1968). As terms of a binding contract, "the arbitration provisions embodied in [exchange] rules have contractual validity." *Geldermann, Inc. v. Stathis*, 177 Ill. App. 3d 414, 418-19 (1988); *see also Geldermann, Inc. v. Commodity Futures Trading Comm'n*, 836 F.2d 310, 318 (7th Cir. 1987) (deeming agreement to be bound by CBOT Rules a "precondition of membership"). Courts in Illinois and elsewhere have uniformly found that exchange members who agree to be bound by an exchange's rules are subject to the arbitration provisions contained within those rules. *See, e.g.*, *Pleanum Fund, LP v. Chi. Mercantile Exch., Inc.*, No. 08-cv-6091 (N.D. Ill. Jan. 23, 2009 & Apr. 24, 2009) (granting CME's motion to compel arbitration with CME member and denying motion for reconsideration of that ruling); *Zechman*, 742 F. Supp. at 1362 ("As members of the Chicago Board of Trade, Zechman and Merrill Lynch are bound by the CBOT Rule 600.00").[5]

Here, in applying to become a member of the Exchange, HTG, like all members, agreed to be "bound by the Certificate of Incorporation, these Bylaws and the Rules, as each may be amended from time to time." *See* Ex. D, CBOT Bylaws, Art. I § 2. This agreement constitutes a "valid, irrevocable, and enforceable" contract between HTG, all other CBOT members, and the Exchange itself. 9 U.S.C. § 2.

---

[5] *See also John Olagues Trading Co. v. First Options of Chi., Inc.*, 588 F. Supp. 1194, 1199 (N.D. Ill. 1984) (holding that arbitration was required because the parties had "agreed to be bound by the rules of the Exchange"); *Stathis*, 177 Ill. App. 3d at 419 (enforcing arbitration rules of the Chicago Board Options Exchange in dispute between members); *Pacaud v. Waite*, 218 Ill. 138, 145 (1905) (finding that members agreed to be bound by CBOT Rules that required alternative dispute resolution of certain claims); *Meierfeld v. Geldermann, Inc.*, No. 95-cv-9911, 1996 WL 426362, at *1 (S.D.N.Y. July 30, 1996) (dismissing claims because plaintiff "cannot maintain" an action subject to exchanges' mandatory arbitration provisions).

As a CBOT member that is "subject to all Exchange Rules," HTG agreed "to have any disputes [. . .] which relate to or arise out of any transaction upon the Exchange or membership in the Exchange, resolved in accordance with Exchange Rules." Ex. C, CBOT Rule 101. By virtue of its CBOT membership, HTG is also expressly "deemed to know, consent to and be bound by all Exchange rules," as well as any "amendments and supplements" to those Rules. *Id.* at CBOT Rule 400. Further, upon trading on the CBOT exchange, HTG "expressly consent[ed] to the jurisdiction of the Exchange and agree[d] to be bound by and comply with the Rules of the Exchange in relation to such transactions." *Id.* at CBOT Rule 418.

One of the Rules that HTG agreed to follow is CBOT Rule 600.A., which provides that "Disputes between and among members [. . .] shall be subject to mandatory arbitration in accordance with the rules of this Chapter." *Id.* at CBOT Rule 600.A.; *see also id.* at CBOT Rule 578.C ("ANY DISPUTE ARISING OUT OF THE USE OF SYSTEMS OR SERVICES OF THE EXCHANGE [. . .] SHALL BE ARBITRATED PURSUANT TO EXCHANGE RULES."). CBOT Rule 600.A. makes mandatory arbitration applicable to any claims between and among members "that relate to or arise out of any transaction on or subject to the rules of the Exchange." Ex. C, CBOT Rule 600.A.1.

As this Court has already found, HTG's allegations, which relate to and arise out of "U.S. Treasury futures markets trading at the Board of Trade of the City of Chicago" and orders submitted "into the CME Globex platform" (Dkt. 1 at 1 & ¶ 5), "clearly" fall within the ambit of CBOT Rule 600.A.'s mandatory arbitration provisions. Dkt. 30 at 11. Accordingly, HTG is foreclosed from litigating its purported claims against the Doe Defendants in this forum, and must instead submit any claims and related requests for relief to the Exchange for resolution in accordance with the CBOT Rules.

### B. Any Purported Arbitrability Issues Must Be Resolved In Arbitration.

HTG has acknowledged, as it must, that claims between CBOT members related to trading on the CBOT Exchange are subject to mandatory CBOT arbitration. *See* Nov. 3, 2015 Hr'g Transcript at 19:20-20:4. To the extent HTG continues to take the position that there remain "waiver" or other "arbitrability" issues for this Court to resolve (Nov. 3, 2015 Hr'g Tr. at 16:19-23, 18:14-18; Dkt. 26 at 7), HTG is incorrect because any such issues must be submitted and resolved solely within the framework of the CBOT Rules.

First, any claim by HTG that this Court must resolve questions of "procedural" arbitrability—*e.g.*, "whether prerequisites to arbitration have been met, or questions of waiver, delay, or other defenses to arbitrability"—is barred by controlling law. Under Supreme Court and Seventh Circuit precedent, questions of procedural arbitrability "should be determined by the arbitrator." *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 481 (7th Cir. 2010) (discussing and applying *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *see also United Steel,* 531 F.3d at 536.

Second, while questions of "substantive" arbitrability—*e.g.*, "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"—may generally be appropriate for judicial determination (*see* Dkt. 30 at 9), that is ***not*** the case when, as here, the parties have affirmatively agreed to submit such questions to arbitration. The law is clear that parties may agree "to submit the question of arbitrability itself to arbitration." *Salsitz v. Kreiss*, 198 Ill.2d 1, 14 (2001); *see also First Options of Chi., Inc. v.*

*Kaplan*, 514 U.S. 938, 943 (1995) (recognizing that a court must defer to an arbitrator's arbitrability decision when the parties agreed to submit that question to arbitration). Indeed, at the November 3, 2015 status hearing, this Court recognized that if HTG were to have any "respondent-specific arguments about the propriety of arbitration," it could presumably raise those arbitrability issues in arbitration. Nov. 3, 2015 Hr'g Tr. at 17:19-23.

Here, CBOT Rule 606, entitled "Review of Arbitrability," clearly and unmistakably requires both claimants and respondents to promptly submit questions concerning the arbitrability of a dispute to the Chairman of the CBOT Arbitration Committee for a final and non-appealable determination. *See* Ex. C, CBOT Rule 606. Courts have consistently held that similar arbitration rules demonstrate a clear and unmistakable intent to arbitrate questions of arbitrability. *See, e.g.*, *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10-cv-6896, 2011 WL 307617, at *4 (N.D. Ill. Jan. 28, 2011) (collecting circuit court authorities); *Shaw Group Inc. v. Triplefine International Corp.*, 322 F.3d 115, 122, 124-25 (2d Cir. 2003).

There is no exception to CBOT Rule 606 allowing claimants like HTG to seek a judicial determination of arbitrability. To the contrary, the CBOT Rules expressly prohibit claimants from pursuing civil actions without first submitting the question of arbitrability to arbitration. Rule 440 provides that a "Member who commences a legal action against [. . .] another Member of the Exchange without first resorting to and exhausting the procedures established by [. . .] the mandatory arbitration provisions of Chapter 6 [. . .] shall be deemed to have committed an act detrimental to the interest or welfare of the Exchange." Ex. C, CBOT Rule 440. Likewise, Rule 432.R. makes it a violation "to fail to submit to arbitration any dispute which Exchange staff, an arbitration panel or the Board decides should be arbitrated pursuant to Chapter 6[.]" *Id.* at CBOT Rule 432.R. Having made a contractual commitment as a CBOT Member to promptly submit

13

questions of arbitrability to arbitration, and having received confirmation from the Exchange that the Doe Defendants are in fact CBOT Members, HTG cannot evade its contractual obligation in continuing violation of the CBOT Rules by pursuing its misguided claims in federal court.[6]

### C. This Court May Not Decide Outstanding Discovery Issues.

As a Designated Contract Market, it is the CME's statutory obligation to oversee and regulate trading on the CBOT exchange. The Commodities Exchange Act requires and empowers the CME to establish and maintain appropriate mechanisms to fulfill these functions. In particular, and among other things, the CME is tasked with: (i) establishing trading rules, (ii) monitoring compliance with those rules, and (iii) enforcing compliance with those rules. 7 U.S.C. § 7(d); 17 C.F.R. §§ 38.150, 38.250, 38.650, 38.700. A critical component of this regulatory framework is the CME's obligation to "establish and enforce rules regarding, and provide facilities for alternative dispute resolution as appropriate for, market participants and any market intermediaries." 7 U.S.C. § 7(d)(14); 17 C.F.R. § 38.750. To this end, CME has enacted a comprehensive set of Rules providing for alternative dispute resolution, including the initial screening of proffered claims and specific procedures for requesting discovery and resolving discovery disputes in arbitration. *See, e.g.,* Ex. C, CBOT Rule 611.

Because HTG's claims against the Doe Defendants are subject to mandatory CBOT arbitration, the only remaining task for this Court is to dismiss this action in favor of arbitration. *Merit*, 581 F.2d at 142 ("If the agreement to arbitrate is valid, the court has no further power or discretion to address the issues raised in the complaint but must order arbitration[.]"). Thus, the

---

[6] Even if the Court were to reach questions of procedural or substantive arbitrability, the only such questions HTG has purported to identify are (i) whether Doe Defendant 1 was a CBOT member at the relevant times, and (ii) whether HTG's claims were arbitrable. *See* Dkt. 26 at 7. Both of these questions have already been resolved. *See* Dkt. 32 (noting that the Doe Defendants are (and at all relevant times were) CBOT members; Dkt. 30 at 12-13 (finding that HTG's "spoofing" claims are covered by Rule 600.A.). There are no other arbitrability issues that have been raised for the Court to consider.

Court should refrain from engaging in any further proceedings on HTG's pending motion to compel discovery and instead leave those issues for arbitration where the parties contractually agreed they should be resolved. *Id.*; *see also Sharif*, 376 F.3d at 726. Indeed, any further action by this Court would frustrate the "unmistakably clear congressional purpose" that the arbitration procedure not be subject to "obstruction in the courts." *Merit*, 581 F.2d at 142; *see also John Olagues*, 588 F. Supp. at 1199 ("It is consistent with Congressional intent to preserve the Exchange's self-regulatory powers by enforcing arbitration provisions and removing its members' disputes from the courts.").

## CONCLUSION

For the reasons set forth above, this Court should dismiss HTG's claims against the Doe Defendants in favor of CBOT arbitration.

Dated: November 24, 2015

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

BY:  /s/ Peter G. Wilson

Christian T. Kemnitz
Peter G. Wilson
KATTEN MUCHIN ROSENMAN LLP
christian.kemnitz@kattenlaw.com
peter.wilson1@kattenlaw.com
525 W. Monroe Street
Chicago, Illinois 60661-3693
Tel: (312) 902-5200
Fax: (312) 902-1061

*Counsel for John Does 1, A, B, and C*