| | | |
|---|---|---|
| HTG CAPITAL PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 02129 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| JOHN DOE 1, A, B, and C, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff HTG Capital Partners, LLC brings this suit against four John Does, alleging that they manipulated futures markets on the Chicago Board of Trade (CBOT or "the Exchange"), in violation of the Commodity Exchange Act (CEA).[1] All four Does—1, A, B, and C—now move to compel arbitration, arguing that because all parties are CBOT members, the Exchange's rules require them to arbitrate. Defendants also move to maintain their anonymity in this litigation, on the basis that CBOT Rules espouse a heightened concern with the confidentiality of trading information. For the reasons explained below, Defendants' motion to compel arbitration is granted and the motion to proceed anonymously is granted as to this federal case but denied without prejudice as to the arbitration (the arbitrator must decide anonymity for the arbitration proceeding). Because HTG's claims must be

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*

arbitrated, the Court dismisses this action without prejudice, and HTG may file a new complaint if it later seeks to enforce or challenge the arbitration decision.

## I. Background

The only facts set out here are those needed to decide the pending motions; for a fuller recitation of HTG's allegations, see the earlier Order in this case, R. 30, 9/22/15 Order at 1-4,[2] *HTG Capital Partners, LLC v. Doe(s)*, 2015 WL 5611333 (N.D. Ill. Sept. 22, 2015). HTG alleges that Defendants violated the CEA by entering orders (sometimes buy, sometimes sell) that they did not intend to fulfill, canceling these orders, and then placing real orders on the opposite side of the market. *See generally* R. 1, Compl. According to HTG, this three-step practice, which is called "spoofing," created artificial price movements that gave Defendants a competitive advantage and harmed HTG's economic position. *Id.* Analyzing publicly available data for trading patterns, HTG identified thousands of its own trades in which it believed it was the counterparty to a spoofed transaction. Compl. Exh. A, 2013 Spoofing Transactions; Compl. Exh. B, 2014 Spoofing Transactions.

HTG sued the spoofers but could only name them as unknown John Does, because trading on the CBOT is anonymous; only CBOT and its parent company, Chicago Mercantile Exchange Group (CME Group), knew the traders' identities. Compl. ¶ 4. So HTG issued a non-party subpoena to CME Group to identify HTG's counterparties to the trades listed in its Complaint and moved to compel compliance with the subpoena. R. 12, Pl.'s Mot. to Compel. One of the Defendants, Doe 1,

---

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

2

stepped forward as the counterparty to some of HTG's trades, but he remained anonymous.[3] R. 19, Doe 1's Mot. to Quash. Doe 1 (joined by CME Group) then moved to quash HTG's subpoena on the grounds that the dispute was subject to mandatory arbitration, so the subpoena was improper. *Id.* Doe 1 also moved to proceed anonymously. *Id.*

But more information was needed to definitively decide the motions. The Court explained that although CBOT Rules did indeed mandate arbitration of disputes between Exchange members, there was no record evidence that Doe 1, or any other Doe, was a CBOT member at the relevant times. 9/22/15 Order at 14. And the Court could not outright order arbitration because there was no motion to do so yet. *Id.* (Remember, Doe 1 had only moved to quash HTG's subpoena, relying on mandatory arbitration as the grounds for the motion.) To resolve the motions, the Court ordered CME Group to file a sealed and *ex parte* declaration with the identities of all the Doe Defendants, their membership statuses, and how they were identified. *Id.* at 2, 14; R. 31, 9/29/15 Minute Entry. If the information revealed that the Does were CBOT members, then they could later file motions to compel arbitration. 9/22/15 Order at 14. The Court explained that these anticipated motions would likely be granted "absent any surprises." *Id.* at 3. On the request to proceed anonymously, the Court ordered additional briefing, asking the parties to identify specific CBOT Rules (or the lack thereof) that required confidentiality protections in arbitration. *Id.* at 23.

---

[3]For convenience's sake, this opinion uses the pronoun "he" for each Doe Defendant.

In response to the Order, CME Group filed, under seal and *ex parte*, the requested information on membership. R. 32, CME Group Decls. (Sealed). The declarations by Robert Krewer (CME Group's Director of Memberships) and Michael Pozzi (CME Group's Senior Director of Software Engineering) revealed that there were four John Does,[4] all of whom were CBOT members at the time of the relevant trades and at the time of the declarations' filing. *Id.*; R. 34, 11/03/15 Minute Entry. Aside from Doe 1, the three additional Does were designated Does A, B, and C. The identities of the four Does remain known only to CME Group and the Court, but the Court instructed CME Group to disclose redacted versions of the Krewer and Pozzi declarations to HTG and Doe 1's counsel (for attorneys' eyes only), and to post a redacted version of the Krewer declaration on the docket. *Id.*; R. 36, Krewer Decl. (Redacted).

The four Doe Defendants now collectively move to compel arbitration, arguing that because they are, and were at all relevant times, CBOT members, arbitration is mandatory under CBOT Rules. R. 47, Defs.' Mot. to Compel Br. They also move to remain anonymous. R. 50, Defs.' Anonymity Br. For the reasons explained below, the motion to compel arbitration is granted and the action is dismissed without prejudice; HTG may re-file if it later seeks to confirm or challenge the arbitration decision. Because this case must be dismissed, Defendants' motion to proceed anonymously is denied without prejudice, and the

---

[4]The parties agreed that CME Group would only disclose entities that were counterparties to at least 1% of the transactions in HTG's complaint. R. 32-3 (Sealed), 10/30/15 Letter from CME Group.

arbitrator will decide on her own whether to reveal the Doe Defendants' identities to HTG during the arbitration. In light of these decisions, the three earlier motions are resolved as follows: (1) HTG's motion to compel CME Group to comply with the subpoena seeking the identities of the John Does, R. 12, is denied; (2) Doe 1's motion (joined by CME Group) to quash the subpoena is granted in part, R. 19; and (3) Doe 1's motion to proceed anonymously is granted as to this federal action and denied without prejudice for the arbitration, R. 19.

## II. Legal Standard

The Federal Arbitration Act, which applies to "[a] written provision … evidencing a transaction involving commerce," 9 U.S.C. § 2, governs this dispute. Under the FAA, an arbitration agreement "arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). That is, the FAA was intended to respect parties' agreements to arbitrate and "put arbitration on a par with other contracts and eliminate any vestige of old rules disfavoring arbitration." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003).

If the parties have a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, then the arbitration requirement must be enforced. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir.

2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). Whether a binding arbitration agreement exists is determined under principles of state contract law. *Janiga*, 615 F.3d at 742 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 934 (1995)). And "the party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). The FAA also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### III. Analysis

### A. Validity and Scope of Arbitration Agreement

The Court previously determined that arbitration of this dispute would be required if Defendants were CBOT members at all relevant times, 9/22/15 Order at 9-18, but a recap is helpful. HTG is bound by a valid arbitration agreement with all other CBOT members. The agreement arises from the CBOT Rules.[5] Upon becoming a member, each member "shall be required to sign a written agreement to observe and be bound by the Certificate of Incorporation, these Bylaws and the Rules." Doe 1's Mot. to Quash at 13 (citing CBOT Bylaws, Art. I § 2); R. 49-4, CBOT

---

[5]In prior briefing, Doe 1 directed the Court to the CBOT online rulebook, available at http://www.cmegroup.com/rulebook/CBOT/. Doe 1's Mot. to Quash at 2, n.2. Defendants also attached excerpts of the CBOT rulebook as an exhibit to their recent briefing. R. 49-3, CBOT Rulebook Excerpts. For simplicity, the Court cites directly to the relevant CBOT Rule rather than to the exhibit or docket number.

Bylaws Excerpts. The members must follow CBOT Rules, including the arbitration requirements in Chapter 6. In particular, "disputes between and among members … shall be subject to mandatory arbitration in accordance with the rules of this Chapter." CBOT Rule 600.A. The Rules drive home the point by warning that "[a] Member who commences a legal action against … another Member of the Exchange without first resorting to and exhausting … the mandatory arbitration provisions of Chapter 6 … shall be deemed to have committed an act detrimental to the interest or welfare of the Exchange." CBOT Rule 440.

In other cases involving stock-exchange rules, federal courts recognize "[t]hat exchange rules create an enforceable arbitration contract … ." *Lehman Bros. Inc. v. Certified Reporting Co.*, 939 F. Supp. 1333, 1336 (N.D. Ill. 1996) (citing Second Circuit and Seventh Circuit cases). In *Geldermann v. CFTC*, the Seventh Circuit held that because the plaintiff was a CBOT member, the plaintiff had consented to be bound by CBOT arbitration rules and waived the right to an Article III forum. *Geldermann, Inc. v. CFTC*, 836 F.2d 310, 318 (7th Cir. 1987); *see also Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1362 (N.D. Ill. 1990) ("As members of the Chicago Board of Trade, Zechman and Merrill Lynch are bound by CBOT Rule 600.00," the relevant arbitration provision at the time). Just so here: HTG and the Doe Defendants are CBOT members bound by the Exchange Rules, so they entered into a valid and enforceable arbitration agreement.

As to the scope of the arbitration agreement, CBOT's arbitration rules cover the dispute between HTG and the Doe Defendants. Disputes between members

"that are based upon facts and circumstances that occurred at a time when the parties were members shall be subject to mandatory arbitration … ." CBOT Rule 600.A. So the "when" is satisfied here, because HTG and the Doe Defendants were members at the time of the facts giving rise to the dispute. The nature of the claim is also covered, because mandatory arbitration applies to "claims … that relate to or arise out of any transaction on or subject to the rules of the Exchange." *Id.* The scope of this provision is broad, and indeed HTG does not dispute that the alleged spoofing involved "transaction[s] on … the Exchange," which is all that is needed to bring the claim within the scope of the arbitration agreement.[6]

To wrap up, CBOT Rule 600.A applies to HTG and each Doe Defendant because their disputes arise from transactions on the Exchange. Therefore, Defendants' motion to compel arbitration, R. 47, is granted. That result dictates the denial of HTG's earlier motion to compel disclosure of Defendants' identities, R. 12, because "it would be burdensome to mandate discovery for a claim that cannot be litigated in court." 9/22/15 Order at 9. For the same reasons, Doe 1's earlier motion to quash the subpoena on CME Group, R. 19, is granted to prevent disclosure of the

---

[6]Not only does the transaction-based nature of HTG's claims make it plain that the arbitration agreement applies, but even the specific claim asserted by HTG—spoofing—is the subject of a CBOT Rule. Spoofing is barred by CBOT Rule 575, which says that "[n]o person shall enter or cause to be entered an order with the intent, at the time of order entry, to cancel the order before execution or to modify the order to avoid execution." CBOT Rule 575.A. CME Group's Market Regulation Advisory Notice also clarifies that "Rule 575 prohibits the type of activity identified by the Commission as 'spoofing,' including submitting or canceling multiple bids or offers to create a misleading appearance of market depth and submitting or cancelling bids or offers with intent to create artificial price movements upwards or downwards." R. 25-5, Advisory Notice RA1405-5R at 2.

Doe Defendants' identities. (The Court will later address the issue of anonymity, which is the other relief sought by Doe 1's earlier motion.)

## B. Waiver

HTG does not seriously dispute that CBOT Rules require arbitration of its claims. Instead, HTG argues that (1) all Defendants waived their right to arbitration by their conduct in this litigation; and that (2) HTG needs to know Defendants' identities in order to make additional Defendant-specific arguments as to waiver. R. 57, Pl.'s Resp. to Mot. to Compel at 4-6. Neither argument is persuasive.

### 1. Threshold Issue

There is a threshold question that must be answered first: should this Court decide whether there has been waiver, or should the arbitrator? Defendants believe that Seventh Circuit precedent requires all waiver issues to be resolved in arbitration. R. 58, Defs.' Mot. to Compel Reply at 4. In response, HTG argues that the Court, rather than the arbitrator, must decide waiver. Pl.'s Resp. to Mot. to Compel at 2-4. The Court holds that it is for the federal courts to determine whether a party has waived arbitration *by litigation conduct*.

In support of their position, Defendants rely primarily on this Supreme Court statement in *Howsam v. Dean Witter Reynolds, Inc.*: "[T]he arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" 537 U.S. 79, 84 (2002) (quoting *Moses H. Cone*, 460 U.S. at 24-25). *Howsam* involved a plaintiff who attempted to arbitrate a dispute under the rules of the National Association of

Securities Dealers (NASD), which allowed arbitration of disputes within a six-year limitations period. *Id.* at 81. Because the plaintiff's dispute was over six-years old, the defendant asked the district court to decide this "question of arbitrability" and declare that the dispute was ineligible for arbitration. *Id.* at 82. But the Supreme Court thought that labeling a limitations-period defense as a "question of arbitrability" was too expansive: "one might call any potentially dispositive gateway question a 'question of arbitrability.'" *Id.* at 83. Rather, true questions of arbitrability were limited to the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter … and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83-84. Examples of these true gateway questions, which the Supreme Court categorized as *substantive* arbitrability issues, included disputes about whether an arbitration contract (1) bound parties who did not sign the agreement; (2) survived a corporate merger and bound the resulting corporation; or (3) applied to a particular type of controversy. *Id.* at 84 (citing cases). In contrast, *procedural* arbitrability questions such as whether "time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.* at 85 (quoting Revised Uniform Arbitration Act § 6, cmt. 2) (internal quotation marks omitted). An example of a procedural question in the arbitrators' domain is whether a party properly complied with a grievance procedure that is a prerequisite to arbitration. *Id.* at 84. Applying this framework,

the Supreme Court held that the dispute about the NASD six-year time limit was for the arbitrator to decide, because it "seems an 'aspec[t] of the [controversy] which called the grievance procedures into play.'" *Id.* at 85 (citation omitted).

It is in this specific context—giving examples of substantive versus procedural arbitrability questions—that the Supreme Court made the general statement that the Doe Defendants rely on: "waiver, delay, or a like defense to arbitrability" are examples of procedural questions for the arbitrator to decide. *Howsam*, 537 U.S. at 84. The context of the statement makes clear that the Supreme Court's reference to "waiver" did not address the specific situation of whether a party's conduct during *litigation* could amount to waiver of arbitration; *Howsam* involved a limitations-period defense, not waiver by litigation conduct. Not surprisingly, then, district courts in this Circuit have held that *Howsam*'s reference to waiver, when read in context, does not apply to waiver by litigation conduct. *See, e.g.*, *Cerna v. Prestress Servs. Indus. LLC*, 2011 WL 1884547, at *4 (N.D. Ind. May 18, 2011); *Banc of Am. Sec. LLC v. Indep. Tube Corp.*, 2010 WL 1780321, at *5 (N.D. Ill. May 4, 2010). As one district court put it, *Howsam* "was referring only to … defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule … and not to claims of waiver based on active litigation in court." *Banc of Am.*, 2010 WL 1780321, at *5 (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)) (internal quotation marks omitted). What's more, *Howsam* relied on the NASD's comparative expertise in interpreting its own rule, 537 U.S. at 80, but that does not apply to waiver by

11

litigation conduct. *Banc of Am.*, 2010 WL 1780321, at *6. In fact, it makes more sense for courts to decide this particular category of waiver, because the answer "typically turn[s] on whether a [party] abused the litigation or pre-litigation process, and a court is most adept at policing procedure-abusing conduct." *Id.* (quoting *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008)) (internal quotation marks omitted). These are sound reasons for assigning the waiver-by-litigation-conduct question to courts, rather than to arbitrators.

There is no Seventh Circuit authority to the contrary. Indeed, even though no Seventh Circuit case has explicitly decided who should decide this type of waiver question, in several instances the Seventh Circuit has reviewed a district-court decision deciding the waiver issue and has not noted any problem with the district court being the decision-maker. *See, e.g.*, *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 996 (7th Cir. 2011) (making a judicial determination of whether a party waived its right to arbitration); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (same); *Sharif*, 376 F.3d at 726 (same). Although Defendants point to a case called *Lumbermens*, in that case the Seventh Circuit merely recited *Howsam's* waiver language in passing, and the case did not involve waiver by litigation conduct. *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476 (7th Cir. 2010). *Lumbermens* instead addressed whether the plaintiff had satisfied a notice requirement. *Id.* at 481. The Seventh Circuit explained that "determining whether a Disagreement Notice contains sufficient detail" was a question for an arbitrator,

who "will be examining the same documents and assessing the same issues relevant to the actual substantive resolution of the parties' price dispute. It would be strange to divide these largely overlapping tasks between the court and the arbitrator." *Id.* (citation omitted). So the Seventh Circuit held that the notice's sufficiency was a procedural issue, and not a substantive question on whether the parties actually agreed to arbitrate. *Id. Lumbermens* thus did not answer, and did not have to answer, the question of who should decide waiver by litigation conduct. *Id.*[7] So this Court is free to conclude, as discussed above, that federal courts should decide that issue, not arbitrators.[8]

## 2. Defendants' Litigation Conduct

Having determined that it is the Court's duty to decide HTG's waiver argument, it is time to turn to that question. A waiver of the right to arbitrate can be express or implied. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry*, Inc., 50 F.3d 388, 390 (7th Cir. 1995). There is no contention that Defendants have *expressly* waived their right to arbitrate in this case, so the only possibility is an *implicit* waiver. The Court must consider the totality of Defendants' behavior, such as "whether the allegedly defaulting party participated in litigation, substantially

---

[7]Other circuits are split. *See Martinez v. Utilimap Corp.*, 2015 WL 3932151, at *8 (S.D. Ill. June 25, 2015) (courts decide waiver in the First and Fifth Circuits, while the arbitrator decides in the Eighth Circuit).

[8]Defendants also argue that the arbitrator must decide waiver because CBOT Rule 606 "clearly and unmistakably" requires all arbitrability questions to be decided by the arbitrator. Defs.' Mot. to Compel Br. at 13; R. 58, Defs.' Mot. to Compel Reply at 3. But Rule 606 does not say that. Using permissive (not mandatory) language, it states: "Any party *may* file a challenge to the arbitrability of a dispute submitted for arbitration at the Exchange." CBOT Rule 606 (emphasis added). The Rule says nothing explicit about waiver by litigation conduct.

delayed its request for arbitration, or participated in discovery." *Kawasaki*, 660 F.3d at 994. Those are signs of implicit waiver because traveling down the litigation track shows that the party is "electi[ng] to proceed before a nonarbitral tribunal." *Cabinetree*, 50 F.3d at 390 (defendant waived arbitration by moving to compel after the parties conducted six months of pretrial proceedings, exchanged thousands of pages in discovery, and set a trial date). The ultimate question is whether "the alleged defaulting party has acted inconsistently with the right to arbitrate." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 588 (7th Cir. 1992) (citations omitted) (there was waiver when defendant raised arbitration only after losing a motion to dismiss and after ten months of litigation had passed).

In this case, Defendants have not done anything that implies a waiver. They did not delay invoking the arbitration agreement. They did not actively litigate the case in federal court, and there has been no discovery on the merits at all. To the contrary, Defendants challenged the propriety of this forum from the outset. After HTG filed its complaint, Doe 1 immediately moved to quash HTG's subpoena on CME Group on the basis that the dispute must be arbitrated. Doe 1's Mot. to Quash. Then, after this Court ordered CME Group to confirm that all parties were CBOT members, the Doe Defendants jointly moved to compel arbitration. Defs.' Mot. to Compel Br. And Defendants have consistently resisted all discovery efforts in this case. Doe 1's Mot. to Quash at 14 ("Because HTG is contractually obligated to follow the CBOT Rules, and because those Rules do not permit CBOT members

like HTG to pursue litigation …, HTG's efforts to obtain discovery in aid of litigation must be rejected."); Defs.' Mot. to Compel Br. at 14-15 ("Thus, the Court should refrain from engaging in any further proceedings on HTG's pending motion to compel discovery and instead leave those issues for arbitration where the parties contractually agreed they should be resolved."). This is the legal equivalent of Defendants yelling at the top of their lungs that they want to arbitrate, not litigate in federal court.

HTG, however, makes a nuanced waiver argument: that Defendants have waived arbitration by arguing that this dispute is subject to the exclusive jurisdiction of CBOT enforcement proceedings, rather than arbitration. Pl.'s Resp. to Mot. to Compel at 4. To provide some context for this position: Doe Defendant 1 previously argued (in his motion to quash) that HTG's spoofing claims may only be resolved in a CBOT enforcement proceeding, and not through arbitration. Doe 1's Mot. to Quash at 14. But this Court rejected the argument because CBOT Rules do not say that the two procedures—enforcement by the Exchange and arbitration by its members—are mutually exclusive. 9/22/15 Order at 12-13. HTG argues, however, that the defense has not let go of this argument, and that equates to waiver. Specifically, HTG points to a footnote in Defendants' recent briefing, which says: "The Doe Defendants recognize that this Court previously found that HTG's spoofing claims may be subject to private arbitration, and not solely to CBOT enforcement procedures … . The Doe Defendants expressly reserve their rights with respect to that determination, as well as all other arguments and defenses against

HTG's allegations." Defs.' Mot. to Compel Br. at 9 n.4. According to HTG, the footnote is telling, because it proves that Defendants are "seeking to compel this action to CBOT arbitration, while also maintaining that the matter is not arbitrable." Pl.'s Resp. to Mot. to Compel at 4-5. To HTG's way of thinking, Defendants are trying to "have it both ways" and thus have waived arbitration. Pl.'s Resp. to Mot. to Compel at 4-5.

These arguments are unconvincing. In the footnote, the defense laid down a marker to preserve a defense that they intend to present in arbitration, namely, the argument that a spoofing claim can only be addressed by the CBOT, and not an arbitrator. Sure, the Court already rejected that argument, but there is nothing stopping the defense from re-raising that threshold argument in the forum that should decide it: arbitration. Saying that a CBOT enforcement action is the exclusive way to address spoofing is *not* the same as waiving the arbitration agreement; the enforcement-action argument is actually consistent with staying out of federal court.[9]

Finally, HTG "believes that it may have another defendant-specific waiver argument" but "will not know whether its waiver argument is relevant to this case until the Court provides it with the identities of the Doe Defendants." Pl.'s Mot. to Compel Resp. at 5. Put another way, HTG wants to know the identities first, and only then, HTG says, can it determine if there is some other waiver argument to

---

[9]Indeed, the earlier Order in this case invited the defense to preserve other arguments: "Doe 1 shall file a motion to compel arbitration, and may note that it is preserving any other arguments it might have for challenging the complaint." 9/22/15 Order at 14-15.

assert. *Id.* But remember that the only waiver argument that this Court is assigned to decide is waiver by *litigation* conduct, not other forms of waiver; other forms are reserved for the arbitrator to decide. So HTG is already in a position to assert the only pertinent waiver argument—waiver by litigation conduct. Defendants' identities are irrelevant to any defendant-specific waiver argument.

## C. "Linking" the Doe Defendants

HTG has a final request: even if arbitration is compelled, the CBOT should still disclose information that would "link each Doe Defendant with HTG's orders" as set forth in the Complaint. Pl.'s Resp. to Mot. to Compel at 6. HTG identified around 14,000 allegedly spoofed transactions in charts attached to its Complaint. Compl. Exhs. A-B. Complying with HTG's request would mean identifying which Doe Defendant made each of those transactions. According to HTG, the purpose of this "linking" is "so that HTG can file whatever arbitration claim or claims it deems appropriate. HTG may elect to pursue the Doe Defendants in separate arbitrations, or may elect to pursue less than all of the Doe Defendants in arbitration." Pl.'s Resp. to Mot. to Compel. at 6.

This request is denied. When a court compels arbitration, it means that the action should not have been in this forum in the first place, which in turn means that the court should not be meddling with procedural requests that should be made in the arbitration. Arbitration, and not this Court, is the proper forum to request this information and for HTG to narrow its claims (if it wants to). To grant HTG's request would mean that every CBOT member could circumvent the Exchange's

arbitration rules and the anonymity of transactions by first filing a federal-court action to gather information through discovery tools.

## D. Dismissal Without Prejudice Versus a Stay

Because HTG's claims must be assessed in arbitration, the question arises whether the Court should dismiss the action or instead stay it pending the arbitration. Defendants argue for dismissal under Federal Rule of Civil Procedure 12(b)(3) for improper venue, Defs.' Mot. to Compel Br. at 7-9, but HTG contends that a stay is the right step. Pl.'s Resp. to Mot. to Compel. As explained next, dismissal is appropriate, but under the Federal Arbitration Act, not Rule 12(b)(3).

The FAA states that when arbitration is required, the district court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Seventh Circuit has interpreted this provision to mean that "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim*, 516 F.3d at 561 (citation and internal quotation marks omitted); *see also Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright."); *Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1172 (7th Cir. 1993) (in granting a motion to compel arbitration, "the proper disposition is a stay rather than a dismissal"). But that interpretation seems premised on the notion that there

is an anticipated "trial of the action," 9 U.S.C. § 3—or at least some remaining "action"—that is possible after the arbitration.

Some other Circuits have held "that there is a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Dental USA, Inc. v. Beak & Bumper, LLC*, 2013 WL 3755415, at *2 (N.D. Ill. July 16, 2013) (citing First, Fourth, Fifth, Sixth, and Eighth Circuit cases) (internal quotation marks omitted). And district courts within this Circuit have done the same, adding that "the Seventh Circuit has repeatedly affirmed district courts' decisions to dismiss suits where all claims are arbitrable." *Chambers v. Aviva Life & Annuity Co.*, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (citing *Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002)). Dismissing rather than staying is sensible because there is "nothing for the court to decide unless and until a party seeks confirmation of or challenges the arbitrators' award." *Bryant v. Fulgham*, 2012 WL 1802150, at *3 (N.D. Ill. May 17, 2012). In light of the "growing trend … favoring dismissal of a case when all of the claims are subject to arbitration," *Felland v. Clifton*, 2013 WL 3778967, at *11 (W.D. Wis. July 18, 2013), this Court concludes that dismissal of this action is appropriate because all of HTG's claims are arbitrable under CBOT Rule 600.A. *See supra* Section III.A. Of course, the dismissal is without prejudice to HTG filing a

challenge to the arbitration decision, but that complaint would look entirely different from the current Complaint, because the allegations would have to target the arbitration award.

It is worth noting that this dismissal is under the FAA and not Rule 12(b)(3). *See* Defs.' Mot. to Compel Br. at 7-9 (arguing that Rule 12(b)(3) is the proper vehicle to dismiss). Rule 12(b)(3), which permits dismissals for improper venue, is reserved for situations when a federal court is asked to compel arbitration *outside* of its district. Interpreting Section 4 of the FAA, which provides that arbitration "shall be within the district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4, the Seventh Circuit has concluded that "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (emphasis in original). So when a court is presented with a motion to compel arbitration that would have to be held in a *different* district, the correct relief is to dismiss the complaint for improper venue under Rule 12(b)(3). *See, e.g.*, *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[U]nder § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district."); *Cont'l Cas.*, 417 F.3d at 733 (dismissal under Rule 12(b)(3) is proper when "the forum selection clauses … require[s] arbitration in other districts"); *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D. Ill. 2013) (converting the motion to compel into a motion to dismiss for improper venue because the contract mandated arbitration in California). In this

case, however, HTG asserts that any arbitration would take place in this judicial district, Pl.'s Resp. to Mot. to Compel at 6, which is where the CBOT is located. Defendants offer no reason to believe otherwise. So, although dismissal is the right step, the dismissal is under the FAA, not Rule 12(b)(3).

### E. Motion to Proceed Anonymously

The last set of motions is Defendants' more recently filed motion to proceed anonymously, R. 50, and Doe 1's earlier motion to proceed anonymously, R. 19. These motions are granted insofar as proceeding anonymously in *this* federal action, but are denied without prejudice as to asserting the anonymity argument in arbitration. This case must proceed in arbitration and not in federal court, so the arbitrator, and not the Court, should decide what, if any, confidentiality protections apply. To be sure, as this Court noted in its earlier order, the Seventh Circuit "disfavor[s] anonymous litigation." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) (citations omitted). This is because "[t]he public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret." *Id.* And as the Court previously explained, "[t]he use of fictitious names for parties[] [is] a practice generally frowned upon" due to this strong presumption of public access, *K.F.P. v. Dane Cnty.*, 110 F.3d 516, 519 (7th Cir. 1997) (citations omitted), not to mention Federal Rule of Civil Procedure 10(a). *See* 9/22/15 Order at 21-23. But because this case must be arbitrated, and in view of the many CBOT Rules that protect the confidentiality of trading data, Defs.' Anonymity Br. at 2-6, the arbitrator should decide whether to reveal the identities

to HTG. The arbitrator will be more familiar with the CBOT Rules, and will be better equipped to determine the import of these confidentiality provisions. So Defendants may maintain their anonymity in this federal action, but the arbitrator will decide what to do in the arbitration.

## IV. Conclusion

For the reasons discussed above, the Court decides as follows:

1. Defendants' joint motion to compel arbitration [R. 47] is granted.

2. Defendants' motion to proceed anonymously [R. 50] is granted as to this federal action and denied without prejudice as to the arbitration.

3. HTG's earlier motion to compel CME Group to comply with its subpoena [R. 12] is denied.

4. Doe 1's earlier motion [R. 19] is granted in part as to the motion to quash HTG's subpoena on CME Group. As to the motion to proceed anonymously, it is granted for this action and denied without prejudice for the arbitration.

5. This action is dismissed without prejudice under the Federal Arbitration Act.

ENTERED:

_s/Edmond E. Chang_
Honorable Edmond E. Chang
United States District Judge

DATE: February 16, 2016